PEOPLES BANK OF QUEEN CITY, RESPONDENT, v. THE AETNA CASUALTY & SURETY COMPANY, APPELLANT; HARRY R. KLEIN ET AL., DEFENDANTS.—40 S. W. (2d) 535.

Kansas City Court of Appeals.

*Walter C. Goodson* and *H. H. Bristol* for appellant.

*Allen Royston, John C. Miller* and *John M. Campbell* for respondent.

CAMPBELL, C.—In an action upon a surety bond of $10,000, plaintiff seeks to recover the sum of $6964, on account of numerous defalcations of the principal, Peter L. Klein, while acting in the capacity of cashier and employee of plaintiff bank.

The petition, *inter alia*, states that the bond was executed May 24, 1922; that at that time Peter L. Klein was the cashier and an officer of the bank, active in the management of its affairs and continued as such until about October 1, 1926, that he died in May, 1927; that the personal defendants are the administrators of his estate; that the condition of the bond was that said Klein would well and faithfully perform all the duties of cashier of said bank or of any other office to which he may be appointed, elected or temporarily assigned; and that the bank was to be indemnified against any loss by reason of any acts of larceny, embezzlement, fraud, dishonesty, forgery, theft, wrongful abstraction or wilful misapplication of the funds or property of the bank committed by said Klein while he was employed in any position or in any location in the service of said bank. The petition also alleges that the bond was to be continued in force until cancelled or terminated; that it has never been cancelled or terminated, and is filed with the petition.

It is further recited "that there has been a breach in the terms of said obligation in this, that the said Peter Louis Klein did not well and faithfully perform the duties of his office as cashier of said bank, but did commit acts of larceny, embezzlement, fraud, dishonesty, forgery, theft, wrongful abstraction, and misapplication of the property and funds of said bank, while acting as cashier thereof, by reason of which loss was sustained by said bank as follows:"

The petition then sets forth in separate paragraphs, numbered 1 to 8 inclusive, alleged defalcations resulting in loss and each is designated as a separate breach of the bond. The losses alleged to have occurred are: Breach 1. $1249.37; breach 2. $3290.40; breach 3. $574.16; breach 4. $330; breach 5. $500; breach 6. $209.07; breach 7. $525; breach 8. $286. The transaction resulting in loss under each breach is set forth and described and then the allegation.

"That all of the aforesaid acts in this petition mentioned were done and performed by the said Klein with a fraudulent design to embezzle and misappropriate the funds of said bank, and all of said acts were done and performed by him while he was in charge of the business and affairs of said bank as cashier and an officer thereof."

It is further stated that upon discovery of the wrongful acts set

forth plaintiff complied with the terms and conditions of the bond and gave notice thereof to defendant company; that defendant thereupon investigated said breaches and wrongful acts, examined the books and records of plaintiff bank, and denied liability.

The administrators filed a general denial, and the surety company made separate answer in which it admits the corporate capacity of plaintiff and defendant surety company; that the bond was executed at the time stated; that it was to continue in force until cancelled or terminated. Reference is made to the condition of the bond and to the acts against which indemnity is to be afforded, followed by a general denial of other allegations. The answer further states that defendant surety company has no knowledge or information with reference to the various alleged breaches named in the petition sufficient to form a belief and therefor denies the same. The answer further pleads certain provisions of the bond; a failure to give notice of claim as required by the bond; failure of the bank to comply with certain statutory provisions; that on June 3, 1925, the resignation of Klein as cashier was accepted by the board of plaintiff bank and that he was not thereafter elected or re-elected as cashier and that another was elected in his stead, and that defendant pleads the foregoing as a bar to recovery.

Breach 4 was dismissed by plaintiff, and upon submission to the jury under instructions directing it to state separately the finding and decision as to each of the seven remaining breaches the jury's verdict was for the plaintiff upon breaches 1, 2, 3, 5, and 8, stating the amount for which it found under each breach and in the total amount of $6212. The jury found for defendants on breaches 6 and 7. The surety company is the sole appellant.

There are numerous assignments and we will indicate part of the evidence deemed appropriate to understand the case and to a consideration of the points raised on appeal. The bond recites:

"The above obligation is conditioned that the said employee shall well and faithfully perform all the duties of the office of cashier of said bank during the term for which he has been elected, re-elected, appointed or reappointed, or of any other office to which he may be appointed, reappointed, elected, re-elected or temporarily assigned, and the Surety hereby agrees to hold the said bank harmless for any loss occasioned by any act or acts of larceny, embezzlement, fraud, dishonesty, forgery, theft, wrongful abstraction or willful misapplication committed by the employee, directly or through connivance with others, until his accounts with the bank shall have been fully settled and satisfied."

By its terms the bond was issued subject to certain provisions. These provisions contain the following:

"The bank, on becoming aware of any act which may be made the basis of any claim hereunder, shall, within ten days after such discovery, deliver written notice thereof to the Surety at its home office in the city of Hartford, Connecticut, and shall, within ninety days after the discovery of such loss, file with the Surety particulars and proofs of the correctness of said claim, and such proofs, if required by Surety, shall be verified by affidavit."

Another provision contains this declaration:

"It being the true intent and meaning of this bond that the Surety shall be responsible as aforesaid for moneys, securities or property diverted from the bank within the period this bond is in force."

The evidence shows that Klein was one of the directors of plaintiff bank and acted in the capacity of cashier from the year 1918, until about November 1, 1926. The minutes of the board of directors show his election on January 4, 1922, to the position of cashier and fixed his salary. He was the general manager of the business of the bank as indicated by the record which details his activities about as follows: He was at the window of the bank receiving deposits; attended to correspondence, cashed checks; made loans; prepared chattels and deeds of trust; entered the notes upon the bank records, wrote the records and cashier's checks; kept the journal and note register; attended to remittances; handled the cash and other assets; sent notice of notes due and made collections thereon; attended to insurance; paying of bond premiums out of the funds of the bank; attended to repairs of the building and real estate; bought supplies; rented real estate; collected rents; was secretary of the board of directors and wrote the minutes; prepared various reports for the bank; paid the taxes; rented the lock boxes, and selected city banks for clearing. He performed all of the foregoing acts continuously until about the first of November, 1926. He was sometimes aided by an assistant.

On June 3, 1925, the minutes of the board show that the resignation of P. L. Klein was accepted; that one Starbuck was elected as cashier; that the resignation of Murfin as vice-president was accepted and Klein was elected as vice-president. After this meeting Klein did not act as vice-president, nor did Starbuck act as cashier. Klein continued in the performance of the duties of cashier as he had previously done and Starbuck, after assisting for a month or two, did not qualify as cashier, gave no bond, and decided not to act as such; he drew no salary, but Klein continued to draw the salary of cashier as theretofore. Murfin who had resigned as vice-president, continued to act as such. Defendant surety company collected the annual premium on the bond for 1926. On October 28, 1926, the directors elected a successor to Klein as cashier of the bank, and about that time or a few days thereafter the connection of Klein

with the bank as cashier and employee was severed and he died the following May.

The evidence on behalf of plaintiff shows that about June 10, 1927, discovery was first made of the various defalcations set up in the petition, and on that day the president of the bank wrote the surety company that within ten days prior thereto the bank had become aware of an act "which might be the basis of a claim under the bond." Shortly thereafter an attorney and adjuster for the surety company called upon the president of the bank for the purpose of investigation. He was given full information and complete access to all the records, minutes, and files of the bank and spent two or three days in their examination and in investigation. It was admitted that he represented defendant surety company and investigated in its behalf. In reply to the letter of the president of the bank, notifying the company, an attorney for the company acknowledged the same and stated that the subject-matter had been referred to the St. Louis claim department for immediate investigation; that a representative would be on hand at an early date, and at that stage of the matter there would be no requirement to fill out any particular form of proof. On June 25, 1927, the adjuster who called upon the representative of the bank wrote that he would call for the purpose of making an inspection of the records in respect to the matters mentioned in the letter of June 10th, and that his purpose was not to discuss or waive any of the terms of the bond, but to report such facts as disclosed by the investigation to the home office for consideration and instruction. On July 28, 1927, the surety company, by its adjuster, wrote the president of the bank as follows:

"Referring to our conversation when in your office on June 30th, I am advised by the home office that, in view of the facts presented, they are unable to see any liability under the bond.

"Should your investigation disclose evidence of dishonesty or embezzlement on the part of Mr. Peter L. Klein resulting in loss to the bank and will furnish us with a detailed statement specifying the wrongful acts and the dates thereof, same will be received without admitting any liability and under a full reservation of any and all rights or defenses that we may have . . ."

There was no further communication and this suit was shortly thereafter instituted.

The substance of the evidence relative to the various breaches of the bond alleged in the petition and upon which the jury found for the plaintiff being designated 1, 2, 3, 5, and 8, shows the following state of facts. Klein was a trusted employee and in virtual control of the bank's business and its property; he had the confidence of the board of directors and no suspicion of his dishonesty or fraud was aroused until after his death; he took or loaned to himself large

sums of the bank's money, and about the month of June, 1925, submitted to the board of directors a written financial statement which showed his net worth to be about $38,000. The statement was discussed with the board on different occasions after it was made and Klein stated from time to time that his financial condition was good. About September 25, 1926, a second financial statement was presented by Klein to the officials of the bank and showed his net worth at that time to be in excess of $30,000. Both of these statements were grossly false in that Klein had listed assets which he did not own, and had failed to list a large amount of his liabilities. A true statement would have shown him either insolvent or of little financial worth.

The evidence in reference to breach one shows that on March 13, 1926, without the knowledge of the bank, Klein took or loaned to himself the sum of $2000, and placed in the files of the bank his note for that amount. At a subsequent monthly meeting of the board of directors held on April 14, 1926, the note came to the attention of the board. Klein's financial statement of June, 1925, was presented and discussed at the meeting, at which time Klein advised the board that his financial condition was the same as shown in that statement. The board relied upon the truth of the statement and Klein's representations to it, and approved his note. The fact that the financial statement and Klein's representations to the board were false is not controverted. On June 4, 1927, there was a balance in the bank in Klein's account of $992.33, which the bank at that time applied upon the $2000 note. The verdict of the jury upon this breach of the bond was for the balance of the $2000 debt with interest and in the sum of $1345.98.

In reference to breach two, it appears that within less than a year prior to October 1, 1926, Klein took from the bank or loaned to himself various sums of money for which he gave seven different notes aggregating the sum of $5445. The dates upon which the money was obtained and the notes given did not appear except that it was within the period above designated. It is not clear that these notes came to the attention of the board or were approved by the board, although it was the custom of the board of directors to go over the loans at each monthly meeting which had been made since the last meeting. There is evidence that these notes were not called to the attention of the board until after they were executed. Klein persisted in his representations to the board that his financial statement was correct. On October 1, 1926, a part of the money which Klein had obtained from the bank had been paid to the bank and at that time he owed a balance upon said notes of $3300, for which sum he executed his note to the bank and procured approval of the board of said note by the false financial statement just made, and by other false representations to the board. Klein made the state-

ment that his financial condition was substantially the same as shown in his statement of June, 1925; that his note was good, and that the bank would run no risk by taking it. After these statements were made and his last financial statement furnished in September, 1926, was examined, the board approved his note November 10, 1926, relying upon the truth of the statement and representations so made. The jury found for the plaintiff upon this breach of the bond in the total sum of $3534.43.

Concerning breach three the evidence shows that about February 28, 1926, the bank owned a large residence property in Queen City of the value of $6000, and one Berry and wife owned a tract of land encumbered by a debt which they could not meet. The bank desired to dispose of the town property and authorized Klein to exchange the bank's property for the equity in the Berry land on condition that the bank receive a deed of trust on the town property to secure $4500, and $1500 in cash. It was further understood that if Klein could obtain other notes or anything above the price which the bank demanded that he was to have it as an inducement to him. Any other notes which he might obtain from the Berrys were considered worthless. Klein made the trade with the Berrys, but upon terms other than the ones authorized by the bank. He obtained for the bank a deed of trust for $4500 and $1000 in cash instead of. $1500, and placed in the bank Berry's note to himself for $500. The facts were not discovered until ''a long time after.'' The exact time of discovery is not shown, but when it was discovered the subject of the Berry note for $500 was taken up with Klein who ''explained he had just put it in temporarily and was going to take it up.'' He also stated that he was solvent. He did not take up the note, the Berrys were insolvent and the bank was unable to collect. During the period of this transaction Klein kept the minutes of the board of directors and was the only one who read them at its meetings, and while the minutes of the meeting of the board held on March 13, 1926, recited that the $500 note was approved, the facts are that the directors did not know that Klein had taken this note instead of cash in the trade until ''a long time after.'' There was evidence tending to show that the makers of the note were insolvent and the court sustained defendant's objection to other evidence in reference to their solvency on the ground that it was immaterial. The jury found for the plaintiff on this breach in the sum of $529.

The evidence relative to breach five shows that on September 17, 1923, one Johnson was indebted to the bank in the sum of. $675 borrowed thru Klein, for which he gave his note and a chattel mortgage to secure same covering livestock and other property. At this time he was also indebted to Klein individually on two notes amounting to $650, and later upon another note in the sum of $350.

Johnson sold pigs, cows, calves, and corn covered by the chattel mortgage given to the bank and delivered the proceeds of said sales, amounting to $740, to Klein, which sum was applied on the indebtedness of Johnson to Klein instead of upon the debt to the bank. Klein knew that the sums of money thus delivered to him by Johnson were derived from sales of property covered by the mortgage to the bank. Johnson testified that he had not paid the bank the amount he owed it and that "he was in no position to pay it." The petition alleges the loss of $500, based upon this transaction and the jury returned a verdict for plaintiff in that sum.

In reference to breach eight, there is evidence that one Sloop and wife on April 13, 1925, executed a chattel mortgage to the bank to secure their note of that date for $200, and all other sums thereafter advanced to the grantor. Subsequently the Sloops executed another note to the bank in the sum of $150. Among other property pledged by the mortgage were two gray mares. The two mares referred to were delivered to Klein at an agreed price of $250, who took possession of the mares and appropriated them to his own use and said he expected to pay the bank that sum on its mortgage. Such payment was never made. The mares were of the reasonable value $250. It appears that the Sloops were insolvent and the directors of the bank had instructed Klein not to loan them any more money. The verdict of the jury on this breach was for plaintiff in the sum of $302.59.

Appellant, in shotgun fashion, assigns seventeen alleged errors. The marks sought to be struck as shown by said assignments and the points raised in the brief are these: (1) The demurrer to the petition should have been sustained. (2) The general demurrer to the evidence should have been sustained. (3) Five separate peremptory instructions in the nature of special demurrers to the five breaches of the bond upon which verdict was rendered should have been given. (4) Plaintiff failed to give notice which is required by the bond as a condition precedent to recovery. (5) Witnesses were incompetent to testify because of Klein's death. (6) The bond in evidence shows a variance from the bond pleaded in the petition. (7) Plaintiff's instructions 1 and 2 are erroneous, and defendant's instructions I, J, M, and N were erroneously refused.

## Opinion.

We have before us respondent's motion to dismiss the appeal. It is based upon defects in the statement and brief furnished by appellant. It is insisted that the statement affords no basis for a clear understanding of the facts in the case and that the assignment of errors, points and authorities, brief and argument are so vague, indefinite, uncertain, and confusing that it is impossible to understand the points relied on. While we have experienced some difficulty in

comprehending the case from appellant's method of presentation and may not in fact understand all that is intended to be presented, still we are of opinion that the statement and brief are sufficient to challenge our attention upon the points which we do understand, and that respondent has not been misled to its disadvantage. We have concluded to overrule the motion in this case, but thereby give no sanction to a careless observance of the law and the rules of this court applicable to the presentation of a case on appeal.

Appellant says that its demurrer to the petition should have been sustained because "the petition shows on its face that the alleged transactions of Peter Louis Klein were adverse to the bank and did not constitute that character of acts within the contemplation of the parties to the bond." We take it from the assignment and from this statement under points and authorities that the appellant seeks to raise here the sufficiency of the petition to state a cause of action. The action of the court upon the demurrer was waived by answer. The sufficiency of the petition may be questioned without exception, but the petition is not defective for the reason stated. We understand appellant means that when Klein obtained the money and property of the bank he was not acting as agent for the bank, but was acting in the capacity of an individual who borrows money or obtains property from the directors of a bank, and when the relationship of the parties was that of strangers and their interests "adverse." The allegations of the petition are sufficient to show that Klein as an individual was not engaged in transactions with the directors of the bank when he obtained the bank's property, but his wrongful acts were without knowledge of the facts by the directors; and it is further apparent from the petition that all of the acts of dishonesty and defalcation set forth were such as to come within the scope of the true intent and meaning of the bond. The petition states a cause of action.

Concerning the general and special demurrers: On account of the unique condition of the record shown in this case we are of opinion that appellant waived its right to question the sufficiency of the evidence pertaining to the specific breaches of the bond.

The bill of exceptions prepared, presented, and allowed in behalf of appellant shows that at the close of plaintiff's case counsel for defendant said: "We stand on our demurrer." Whether this was intended as an oral demurrer to the evidence does not appear. No written demurrer other than that to the petition had been presented. The bill then sets forth plaintiff's given instructions, five in number, and defendant's exception thereto. And shows that thereupon defendant surety company prayed the court to instruct the jury according to a series of eight instructions which were allowed by the court. The bill then recites: "Whereupon . . . . the defendant

surety company further prayed the court to instruct the jury as follows." Defendant's refused instructions are then set forth lettered A to N inclusive. Instruction A directs a general finding for the surety company, and B, C, D, E, F, G, and H direct a verdict for the surety company upon breaches 1, 2, 3, 5, 6, 7, and 8 as described in the petition. We have here an affirmative showing that both plaintiff and defendant offered and obtained instructions submitting the case to the jury, and *thereafter* defendant requested its instructions in the nature of a demurrer. This is not permissible. If appellant desires to have the sufficiency of the evidence reviewed on appeal it must show that the point was raised *prior* to the giving of instructions submitting the case. The record before us imports verity and it would not do to treat it otherwise than as truthfully stating the order of procedure. A contrary presumption will not be indulged.

The statement of counsel at the close of plaintiff's case that "we stand on our demurrer" is of no avail. A demurrer *ore tenus* is permissible in a trial before the court, but when a peremptory instruction in the nature of a demurrer is sought in a jury trial such instruction must be presented in writing. [Section 1417, Revised Statutes 1919; Gee v. Sherman, 221 Mo. App. 121, 124, 293 S. W. 789, and cases cited.]

The petition in this case stated a cause of action upon eight separate and distinct breaches of the bond and is comparable to a petition consisting of different counts. A peremptory instruction to find for defendant generally, and in the nature of a general demurrer, not leveled at each separate alleged breach of the bond or at each count of the petition should be overruled. [Stephens v. Saunders, 239 S. W. 600; Williams v. National Life & Accident Ins. Co., 1 S. W. (2d) 1034.] By joining in the submission of a case on instructions a defendant admits the sufficiency of the evidence to justify such submission where he has not previously tendered a demurrer. [Carroll v. Young, 267 S. W. 436, 439; Berkshire v. Holcker, 202 Mo. App. 433, 442, 216 S. W. 556; Hart v. Brown, 216 S. W. 552, 554.] We are not aware of any case from our own State wherein a similar condition of the record was presented. However, the Supreme Court of Illinois has considered a situation which we deem identical. In the case of Wright v. Avery, 50 N. E. 204, the court states:

"After the court had given to the jury a series of instructions, some at the instance of plaintiff and others at the request of defendant, submitting the facts to the jury, for their decision, the record shows that 'thereupon the defendant moved the court to further instruct the jury as follows (13): Under the pleadings and proof in this case the defendants are entitled to a verdict of not guilty

from the jury and you will so find.' This instruction came too late and was properly refused for that reason, if for no other.''

A similar ruling had been made by the same court previously and it has been consistently followed in that jurisdiction in a long line of cases, some of which are: Pierce v. Walters, 164 Ill. 560, 45 N. E. 1068; West Chicago Street R. R. Co. v. Foster, 175 Ill. 396, 398; West Chicago Street R. R. Co. v. Yund, 48 N. E. 208; C. B. & Q. R. R. Co. v. Murowsky, 179 Ill. 77; Chicago Great Western Ry. Co. v. Mohan, 187 Ill. 281.

*Notice of claim.* Appellant insists that notice of claim was not timely and that ''this was a clear breach of the bond which is there stated to be precedent to recovery,'' and that the failure of plaintiff to give notice of claim within the time and manner prescribed in the bond precludes recovery. The pertinent provision of the bond has been set forth in the statement. There is no provision in the paragraph named or anywhere in the bond that the giving of notice shall be a condition precedent to the right of recovery, or a provision that the surety shall not be liable, or that the bond would be forfeited in the event of failure to give the notice designated. A provision of non-liability is expressly stated in other paragraphs upon a breach of the conditions named in them. This is significant, as well as the conduct of defendant after notice was given by plaintiff and received by defendant. Under the facts and circumstances shown in evidence defendant is not in position to urge that plaintiff is precluded on account of failure to give timely or sufficient notice. Whether the notice was timely is purely a question of fact, and plaintiff's testimony expressly shows that notice was given immediately after knowledge of the facts reached it. Unquestionably, the notice given was sufficient to put defendant upon inquiry. Its representative was upon the ground very shortly after notice was received and, according to the evidence of plaintiff, was fully informed, which can mean nothing more than that defendant was given all the information then in possession of the plaintiff. The representative of defendant made a prolonged investigation and to the full extent desired by it and was given complete access to all records of the plaintiff, and no complaint is made as to a failure of plaintiff to fully co-operate with defendant to discover the facts. Plaintiff was then informed that at the time there would be no requirement to fill out any particular form of proof. No objection or complaint was made at any time on account of insufficient notice, and after defendant had completed its investigation it finally denied liability because, as it said, under the facts it could see no liability. There was no other reason assigned as to why liability was denied. Any failure on the part of plaintiff to give the required notice was never suggested. Defect of notice, if any, was waived. [Exchange Bank v. Turner, 14 S. W. (2d) 425,

432; Luthy v. Ins. Co., 20 S. W. (2d) 299; State ex rel. v. Trimble, 20 S. W. (2d) 46; Carroll v. Ins. Co., 249 S. W. 691.]

Cases cited by appellant to sustain its position that a failure to give notice avoids the policy are not controlling or persuasive. In most of the cases cited there is an express provision of non-liability or of forfeiture as the penalty for failure to give the notice. There is a distinction between policies which stipulate that a failure to give notice shall work a forfeiture and policies which call for such notice, but make no stipulation as to the consequence of a failure to comply.

"Where no forfeiture is prescribed in the contract the court shall have regard to the consequence that results from the failure to give the notice as shown by the facts in the case, and if it appears that the purpose for which the notice and proofs were required has really been accomplished the plaintiffs should not be precluded." [Dezell v. Fidelity & Guaranty Co., 176 Mo. 253, 280, et seq.]

Other cases following the Dezell case are Shanebarg v. National Accident Society, 263 S. W. 512; Malo v. Niagara Fire Ins. Co., 282 S. W. 78. The surety lost no substantial right by reason of any alleged insufficiency in the notice, and we are prohibited from holding that plaintiff is precluded. Such holding would be in effect to declare a forfeiture or non-liability which is wholly unwarranted. The holding which we here make is that under the facts and circumstances of the case at bar plaintiff is not precluded from a recovery on account of any matter urged by the surety in respect of notice.

*The admission of testimony.* Appellant contends that under section 5410, Revised Statutes 1919, various witnesses who testified were incompetent because "the testimony of witnesses as to transactions with deceased Klein was incompetent." We understand from this that appellant intends to say that the *witnesses* were incompetent under the statute. The testimony complained of is not designated nor is there any reason assigned as to why it was not competent proof. Appellant does not set forth in an orderly and proper manner the subject-matter sought to be presented, but does point to various pages of the abstract, and in the course of the brief and argument refers to the testimony of specific witnesses which is claimed to have been erroneously admitted because it referred to transactions with Klein who was deceased and who could not contradict the evidence. It is necessary for us to refer to the abstract and search its pages for the evidence and the objections made thereto. While we deem the brief defective and the point not properly presented. [Hayes v. McLaughlin, 217 S. W. 262; Wilkerson v. National Council of K. & L. of Security, 218 S. W.

976.] We will not dispose summarily of the subject for that reason. Witness Rolston was the first one called and was asked to state his name. Whereupon defendant's counsel objected "to the offer of any testimony" for various reasons assigned, one of which was "because where one of the original parties to a contract or cause of action in issue and on trial is dead, the other party to the contract or cause of action shall not be permitted to testify in his own behalf." The objection was not to the competency of the witness for any reason shown to exist, but was to the offer of any testimony. This witness testified to great extent about the matters in controversy before any objection was made to his competency as a witness. It was the duty of appellant to make the objection now raised at the first opportunity. [Norvel v. Cooper, 155 Mo. App. 445, 452-3.] Further, appellant indulged in an extensive cross-examination of this witness, and partly upon questions not referred to in his direct testimony, and thereby waived his competency. [Reitz v. O'Neil, 2 S. W. (2d) 178.] In the course of the examination it developed that this witness was financially interested in the result of the litigation in that the assets of the bank had been assigned to him and others who were directors of the bank to indemnify them for money they had advanced to pay depositors, and that the assets so assigned were held as collateral in their possession. The initial suggestion of Klein's death was in connection with the objection to the introduction of any testimony and was not directed to the competency of any particular witness. At that time it had not been shown that the witness had any interest in the case, and when this was developed there was no motion to strike his testimony. The objection at the trial was not the objection which is now urged.

Objection was also made to the testimony of witness Johnson. He was not an officer or director of the bank or interested in the litigation. He was not incompetent for the reason assigned. [Lead & Zinc Co. v. Lead Co., 251 Mo. 721, 742; Darby v. Ins. Co., 293 Mo. 1, 15.] Nor was the objection made to the testimony of this witness until he had given a substantial part of it. The same is true in reference to the testimony of witness Starbuck and also witness George. The objection to the testimony of these three witnesses came too late. [Norvel v. Cooper, 155 Mo. App. 445, 452-3.]

*Variance.* Appellant says: "Plaintiff cannot recover on a bond pleaded in its petition, the conditions of which are at variance with the terms and provisions of the bond sued on." Under this statement there is the implied charge that plaintiff sued upon one cause of action and seeks to recover upon another. There is no variance in pleading and proof, nor is there any showing that appellant sought to avail itself of its privilege if a variance actually existed.

The petition described the obligation sued upon in a manner sufficient to identify it with the bond introduced in evidence. Appellant admitted the execution of the bond and could not have been surprised, to its disadvantage, by an introduction of the bond in evidence. It is insisted by appellant that the terms of the bond as alleged in the petition are broader than the terms of the actual bond, and that the bond upon which the suit is based does not cover the transactions pleaded in the petition. The point, as we get it, is that the act of Klein which are alleged to constitute a breach of the bond were not his acts as cashier or as an employee of the bank. The condition of the bond set out in the statement is that the employee shall well and faithfully perform all the duties of the office of cashier or of any other office to which he may be appointed or temporarily assigned, and that the bank shall be held harmless for any loss occasioned by any act of embezzlement, fraud, dishonesty, theft, wrongful abstraction or wilful misapplication committed by the employee. And it is further said in the bond: "It being the true intent and meaning of this bond that the surety shall be responsible as aforesaid for moneys, securities or property diverted from the bank within the period this bond is in force." It is apparent from the evidence heretofore set out, and from other evidence in the record, that all of the acts of Klein which are made the basis of the verdict were done and committed by him in no other capacity than that of an employee of the bank, and that a faithful performance of his duty to the bank could not have permitted such acts. He wrongfully appropriated and diverted the money of the bank, under the guise of loans to himself while insolvent, without the knowledge or consent of the directors of the bank at the time, and thereafter, thru fraud and dishonesty, falsely represented the facts to his employer and misled and deceived the bank to its loss. The same is true in reference to other property belonging to the bank which was diverted from the bank and to the use of the employee, none of which was discovered until after his death. The record is replete with proof of his disobedience to the orders of the board of directors and of his deception of the board, and that all things were performed by him while acting in the capacity of any employee of the bank and in the performance of work assigned to him.

It is further contended that the bond did not cover the acts of Klein because he was not formally re-elected cashier after the presentation of his resignation which was accepted June 3, 1925. The evidence shows that appellant collected the premium on the bond for 1926, and inferentially, all other premiums. The agent of the company examined the records of the bank after notice of claim on account of a breach of the bond and evidently ascertained that

Klein continued to act as cashier. The answer pleads the resignation of June 3, 1925, and appellant is now contending that Klein was not cashier thereafter, and at the same time is holding on to premiums which it is not entitled to retain if the bond was not in force and effect at the time of the alleged breaches. Under the circumstances appellant is estopped to claim that Klein was not an officer or employee of the bank. [State ex rel. v. Trimble, 20 S. W. (2d) 46.]

*Instructions.* Complaint is made of plaintiff's instruction 1. The ground of objection is that the instruction does not submit to the jury the conditions upon which plaintiff would be entitled to recover but grants the jury a "roving commission." The instruction does not authorize recovery upon the finding of specific facts, but is merely descriptive of the various alleged breaches and directs the jury as to the amount permissible to be found for plaintiff under each breach in event the jury should find for plaintiff. There was no instruction informing the jury under what conditions plaintiff was entitled to recover upon any of the alleged breaches. This was mere non-direction and is not error. [Roberson v. Loose-Wiles Biscuit Co., 285 S. W. 129.] Plaintiff's instruction 2 informs the jury that plaintiff was sued upon eight separate and distinct items called breaches and has dismissed as to breach four, and that the verdict should state the finding or decision as to each of the seven remaining breaches or items separately, "and if your finding is for the plaintiff as to any one or more of said items you should also state in your verdict the exact amount which you find from the evidence to be due . . ." The criticism of the instruction is in effect the same as that of instruction 1 in that it fails to present the issues to the jury. The insistence is nothing more than one of non-direction.

Defendant's refused instruction 1 is to the effect that before plaintiff can recover it must show to the reasonable satisfaction of the "court" by the greater weight of the evidence that it had performed all of the conditions required by the terms of the bond. The instruction was properly refused because the "court" was not passing on the case; and further, because one of the provisions of the bond recited that plaintiff should give notice of claim, and we have held that plaintiff is not precluded on account of anything pertaining to notice.

Instruction J was likewise properly refused because it declared there could be no recovery if knowledge of the acts of Klein came to the directors more than ten days before such knowledge was reported to the surety company.

The court properly refused defendant's instructions M and N, seeking in effect to withdraw from the jury evidence of breaches

1 and 2, of the bond on the ground that "when death seals the lips of one of the parties to the contract the law seals the lips of the other party." Inasmuch as we have held that the question of competency of witnesses was not properly raised the refusal of these instructions was correct.

There are other matters which are urged and argued under points of the brief which pertain to the ruling of the court upon the general and special demurrers. In view of our holding that appellant waived the point of the sufficiency of the evidence we will give no further attention to them. We have considered all points properly raised on appeal and the authorities relied upon and find that appellant has failed to show any error materially affecting the merits of the case. The judgment should be affirmed. The Commissioner so recommends. *Campbell, C.,* not sitting.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.