**Belle WOLFSON (Plaintiff), Respondent,**

**v.**

**Leo CHELIST, Executor of the Estate of Bernice Chelist, Deceased (Defendant), Appellant.**

**No. 29110.**

St. Louis Court of Appeals.

Missouri.

April 19, 1955.

40

J. C. Jaeckel, and Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant.

James W. Jeans, and Hullverson & Richardson, St. Louis, for respondent.

MATTHES, Judge.

Plaintiff-respondent recovered a verdict and judgment in the trial court in the amount of $2,000 as damages for personal injuries sustained as the result of a fall

upon premises owned and occupied by Bernice Chelist.

In due time defendant-appellant filed a motion for judgment in accordance with motions for a directed verdict offered at the close of plaintiff's case, and again at the conclusion of all the evidence, and, being overruled, the defendant prosecutes his appeal to this court.

This action was instituted on March 12, 1952, by the filing of plaintiff's petition naming Leo Chelist as the sole defendant; thereafter, on April 18, 1952, an amended petition was filed joining Bernice Chelist as a defendant. Bernice died on May 2, 1952; on January 30, 1953, Leo Chelist, as executor of the estate of Bernice Chelist, was substituted as a party defendant in the place and stead of said decedent, and on April 9, 1953, plaintiff's third amended petition was filed against Leo Chelist, and Leo Chelist as executor of the estate of Bernice Chelist, in which it was alleged: On or about August 11, 1951, while an invitee upon premises owned and occupied by defendants, and known as 1094 Roth Place, University City, Missouri, plaintiff was walking on the stairway at the rear of said premises and was caused to slip and fall as the result of the negligence and carelessness of the defendants in (a) depositing a greasy and slippery substance upon the steps which caused them to be dangerous and not reasonably safe, (b) failing to remove said substance, (c) failing to warn plaintiff of the presence of the substance which was not reasonably visible to persons using the steps, and (d) failing to exercise ordinary care to furnish plaintiff with a reasonably safe place to walk as the invitee of defendants.

Separate answers were filed admitting that Bernice Chelist owned and occupied the premises, and denying the allegations of negligence. On the day of the trial plaintiff dismissed as to the defendant Leo Chelist. In submitting the case the jury was instructed that it is the duty of every owner or occupant of premises to exercise ordinary care to keep premises in a reasonably safe condition for use of persons lawfully there by invitation; that the failure to exercise ordinary care constituted negligence; that if the jury found from the evidence that Bernice Chelist placed cat meat on the porch and thereby created a condition which was dangerous to persons using the steps or porch and that in so doing Mrs. Chelist failed to exercise ordinary care and was negligent, plaintiff was entitled to recover.

In urging that plaintiff failed to make a jury case, defendant contends that, because Bernice Chelist was dead at the time of the trial, the dead man's statute rendered plaintiff incompetent to testify as to occurrences prior to the death of Bernice, including of course the events surrounding plaintiff's fall, and that her testimony, admitted over objection, should not be considered in determining the sufficiency of the evidence to warrant submission of the case to the jury; that the deposition of Bernice Chelist taken by plaintiff was improperly admitted in evidence for the reason that the notice served upon defendant was insufficient and not in compliance with the statute.

Because of the attack against the admissibility of the deposition, we observe: On April 28, 1952, there was served upon attorneys for defendants at their office in the City of St. Louis, Missouri, a notice to take depositions on behalf of plaintiff at the home of Bernice Chelist, 1094 Roth Place, University City, Missouri, on the first day of May, 1952. Insisting that the notice was inadequate, the attorneys representing the defendants did not appear at the appointed time and place and participate in the taking of the deposition of Bernice Chelist, who, according to the record, was examined by plaintiff's counsel. On August 8, 1952, said deposition was filed in the clerk's office, and on the 14th day of August, 1952, defendant Leo Chelist filed his motion to suppress the deposition; on April 15, 1953, defendant Leo Chelist, executor of the estate of Bernice Chelist, deceased, filed his separate motion to suppress the deposition, and thereafter both motions to suppress were overruled.

The point is made that the notice of three days given prior to the taking of the deposition was inadequate, illegal and insufficient, and that nothing short of four days could constitute a legal notice under the existing circumstances and within the meaning of the statute. Specifically, it is argued that, "Since the deposition was to be taken outside the City of St. Louis, where the notice was delivered, and since University City is less than fifty miles from the City of St. Louis, plaintiff was required to give four days' notice of the taking of said deposition, whereas, the time provided for in the notice was but three days, and, therefore, insufficient.", and that the phrase, for every fifty miles, means "fifty miles or any portion thereof."

We deem it advisable to consider and dispose of this contention before considering the facts bearing upon the status of plaintiff and the manner in which she sustained the injuries giving rise to this lawsuit, because obviously if the notice above referred to did not comply with the statute, the testimony of Bernice Chelist preserved by the deposition should not be considered, and the disposition of that point also bears upon the competency of plaintiff as a witness in her own behalf.

The statute, Section 492.200, V.A.M.S., which we must construe, provides:

"In all cases where notice is required by sections 492.080 to 492.400, the same shall be served at least three days before the day of taking the depositions, and one day additional for every fifty miles for the first three hundred miles, * * * of distance from the place of serving or setting up such notice, to the place of taking the depositions, * * * *".

Prior to 1883 it was provided that in addition to the minimum requirement of three days' notice, one day additional notice for every 25 miles was to be given for the first 300 miles. The 32nd General Assembly of Missouri amended the statute, Section 2142, R.S.Mo.1879, by increasing the distance for additional notice to 50 miles for the first 300 miles. Laws of Missouri 1883,

page 83. Although the statute has been in effect for more than 72 years without change as to substance, the precise question has never been passed upon by the appellate courts of Missouri, at least able counsel refer us to no case construing the statute, and our research discloses none.

It is fundamental that in construing Section 492.200, our principal purpose is to ascertain and give effect to the intention of the Legislature, and if possible, "the statutory intent should be determined from the words which have been used 'considering the language honestly and faithfully to ascertain its plain and rational meaning and to promote its object and manifest purpose.' City of St. Louis v. Senter Commission Co., 337 Mo. 238, 85 S.W.2d 21, 24; Artophone Corporation v. Coale, 345 Mo. 344, 133 S.W.2d 343, 347; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, 925." State ex inf. Rice ex rel. Allman v. Hawk, 360 Mo. 490, 228 S.W. 2d 785, loc. cit. 788; Section 1.090, V.A.M.S.

We are not impressed with defendant's contention that in any case where the deposition is taken at a place other than where the notice is served, an additional day's notice must be given though the distance is less than 50 miles. Projecting the reasoning of defendant it would follow that if notice to take deposition was served on one side of the street separating the city from the county, and the deposition was taken in a building on the other side of the dividing street, the distance being 50 feet, that one additional day's notice would be required. This is so because 50 feet is a portion of 50 miles. This may be an extreme example, however, if the statute is susceptible to the construction defendant would have us adopt, the conclusion is inescapable that it would apply if the distance between the places *was any part of 50 miles,* whether 49½ miles or 50 feet. We are not persuaded to believe that this was the intention of the Legislature. If that body had intended to require one day's additional notice for any portion of every 50 miles of distance from the place of serving or setting up the notice to the place of taking

the depositions there is no apparent reason why it would not have so provided in clear and unequivocal terms. We are without authority to supply or insert words in a statute unless there is an omission plainly indicated, and the statute as written is incongruous or unintelligible and leads to absurd results. Span v. Jackson, Walker Coal & Mining Co., 322 Mo. 158, 16 S.W.2d 190; State ex rel. Cobb v. Thompson, 319 Mo. 492, 5 S.W.2d 57; neither do we have the right to change the meaning of a plain and unambiguous statute. Steggall v. Morris, 363 Mo. 1224, 258 S.W.2d 577.

■ Applying the principle that the language of a statute must be considered "honestly and faithfully to ascertain its plain and rational meaning and to promote its object and manifest purpose", we hold that the statute means that if the deposition is taken within 50 miles from the place where the notice was served and set up, a notice of three days is sufficient, and that additional notice of one day is not required unless the distance between said points is at least 50 miles. Since we judicially notice that 1094 Roth Place, University City, is less than 50 miles from the place where the notice to take deposition was served, it follows that the notice in this case was sufficient and the deposition of Bernice Chelist was properly received in evidence.

■ Having concluded that the deposition of Bernice Chelist was taken pursuant to legal notice and properly admitted in evidence, we consider the contention that plaintiff was incompetent to testify because of the death of Bernice Chelist. The commonly referred to dead man's statute, Section 491.010, V.A.M.S., not only disqualifies one of the original parties to the contract or cause of action in issue from testifying in his own favor where the other party is dead, but it also renders incompetent as a witness for any purpose a party litigant where the other party is an executor or administrator, except as to such acts and contracts as have been done or made since the probate of the will or appointment of the administrator. Kersey v. O'Day, 173 Mo.

560, 73 S.W. 481; Weiermueller v. Scullin, 203 Mo. 466, 101 S.W. 1088; Schwalbert v. Konert, 230 Mo.App. 811, 76 S.W.2d 445. However, the taking of the deposition of Bernice Chelist rendered plaintiff a competent witness as to matters testified to by said deceased in her deposition. Stone v. Hunt, 114 Mo. 66, 72, 21 S.W. 454; Carpenter v. Gruendler Machine Co., 162 Mo. App. 296, 141 S.W. 1147; Ferry v. Woody, 210 Mo.App. 98, 241 S.W. 78; Vigeant v. Fidelity National Bank & Trust Co., 239 Mo.App. 46, 188 S.W.2d 533. Furthermore, the rule is well established that in order to attack the competency of a party to litigation as a witness for any and all purposes, it is essential that objection be made at the earliest possible moment, putting in issue the incompetency of the party to testify, and such objection cannot be delayed until the party, who might otherwise be completely disqualified, has testified at length. People's Bank of Queen City v. Aetna Casualty & Surety Co., 225 Mo.App. 1113, 40 S.W.2d 535; Kneuven v. Berliner's Estate, Mo.App., 54 S.W.2d 494; In re Reichelt's Estate, Mo.App., 179 S.W.2d 119. The record discloses that when plaintiff was offered as a witness defendant raised no question as to her competency, in fact at no time during the trial did defendant, by proper objection, question the right of plaintiff to testify in her own favor on the ground that the other party was the executor of the Bernice Chelist estate. There was one objection interposed "to the competency of this witness concerning any such matters because of the death of Bernice Chelist", and again, when plaintiff was asked to tell what she did as she started to leave the Chelist home, the objection was "on the ground this witness is incompetent to testify concerning matters of that character because of the death of Bernice Chelist". We also note that during the course of plaintiff's direct examination she identified certain photographs of the entrance to the Chelist home without objection, and when the photographs were offered in evidence, counsel for defendant informed the court he was raising no question as to their admissibility.

■ In view of all the circumstances plaintiff was not disqualified from testifying as to all matters antedating the death of Bernice Chelist, and in determining whether a jury case was made we shall consider plaintiff's testimony bearing upon matters developed in the deposition of Bernice Chelist as well as other testimony given by plaintiff to which proper objection was not made.

Reverting to the question of the sufficiency of the evidence to make a jury issue the questions are: What was the relationship existing between plaintiff and Bernice Chelist, and, what care and duty did the latter owe the former? Determination of these questions requires a statement of the facts.

Plaintiff, 55 years of age at the time of the trial, and Bernice Chelist were sisters. In August of 1951, plaintiff was a resident of Miami Beach, Florida, but had been in St. Louis for about two weeks prior to August 11th. Bernice called and requested plaintiff to come over, take her for a ride, "and we'd have lunch together". Directly bearing upon the visit, the following appears in the record:

"Q. In other words, it was a social engagement, wasn't it? A. I would say it was, more or less.

"Q. Well, you would say it was, wouldn't you? A. Well, I guess you would call it social, more or less.

"Q. That is what you would call it wouldn't you? A. We were going out for lunch and for a ride, if you call that social.".

Plaintiff arrived at the Chelist home around 11:00 o'clock, a. m., remained about half an hour, and started to leave the home through the rear or side entrance which she used in entering the building. There was a screen door on the entrance which swung open to the left as plaintiff was leaving. From the two photographs identified as pictures of said entrance it appears there was a concrete landing, sometimes referred to in the evidence as a stoop,

immediately outside the door. It was wider than the entrance, and extended approximately the length of a brick from the left side of the extreme right edge of the door frame as one came out through the entrance. There was one concrete step between the top of the stoop and the ground, and this step was not as wide as the stoop. When asked if she watched where she was stepping as she went up the steps on entering, plaintiff stated: "Yes, I looked. I gazed at them, anyway." Upon being interrogated as to whether she saw anything on either step, her answer was: "No, not going up, I didn't see anything." Mrs. Chelist preceded plaintiff in leaving the house, and was at the car at the time plaintiff fell. Before stepping through the door on exiting, plaintiff "gazed out and looked down". She saw nothing on the stoop, she swung the screen door open, hinged to her left, stepped out, her left foot and leg first, and when her said foot came in contact with the top step, it "skidded", and she fell to the right, her foot coming in contact with the ground "to the right of the step". She indicated by a mark on one of the photographs that her left foot slipped upon the landing or stoop near the outer right corner thereof as she was exiting, from which it can be concluded that she did not step straight out through the doorway but to her right.

By deposition Bernice Chelist testified that the night before she had thrown some hamburger out for the cat—she had told the girl to "mop up the porch" after cleaning kitchen, but the porch had not been cleaned. She had not warned her sister. A neighbor and witness stated that after plaintiff fell he examined the porch and found a grease spot, "roughly about, oh, three or four inches in diameter * * *" "there were little particles of substance there, minute particles."

■ If the plaintiff was an invitee of Bernice Chelist and upon her premises as such as plaintiff contends, then it was the duty of Bernice to use ordinary care to prevent injury to plaintiff. Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 I R.A.,

N.S., 1045; Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W.2d 260; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723; Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756. On the other hand if the plaintiff was a licensee, as urged by defendant, she took the premises as she found them, and barring wantonness or some form of intentional wrong or active negligence on the part of Bernice, cannot recover for injuries sustained on the premises. Glaser v. Rothschild, supra; Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820; Oliver v. Oakwood Country Club, Mo.Sup., 245 S.W.2d 37; Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679; Twine v. Norris Grain Co., Mo.App., 226 S.W.2d 415.

In Glaser v. Rothschild, supra, our Supreme Court considered the status of individuals upon the premises of another and very definitely pointed out the factors and elements distinguishing an invitee from a licensee. We are unable to agree, however, with the suggestion of plaintiff that, measured by the rule laid down in the Glaser case, she was an invitee of Bernice Chelist. The facts surrounding Glaser's presence upon the premises of Rothschild were entirely different than those presented by the record in this cause, in that it was established beyond dispute in the Glaser case that the business invitor-invitee relationship existed.

It is true Mann v. Pulliam, 344 Mo. 543, 127 S.W.2d 426, also relied upon by plaintiff, dealt with a host and guest relationship. The status of plaintiff while upon the premises of defendant where she received her injuries, i. e., whether she was a licensee or invitee, was not discussed or considered directly by the court in ruling the case. We observe, however, that the court ruled that plaintiff, while a social guest upon the property of defendant, failed to make a submissible case of actionable negligence, so we fail to understand wherein said case supports plaintiff's position.

The universal rule seems to be that a social guest is not an invitee as that term is applied to persons in and upon premises where a business is carried on, but is a licensee, and by some eminent authorities is designated a gratuitous licensee. In 65 C.J.S., Negligence, § 32b, p. 487, we find this statement: "A 'gratuitous licensee,' or as sometimes called a 'permissive licensee,' is any licensee other than a business visitor, and includes a social guest;" and in § 32e, p. 489, same authority, we find: "It has been held that one who comes on premises by express invitation for purely social purposes, to enjoy hospitality as a guest of the owner or occupant, or a guest who enters merely to receive a gratuitous favor from the owner or occupant, has the rights only of a licensee." The relation between host and guest, according to 38 Am.Jur., Section 117, page 778, is that of licensor and licensee, and Harper on Torts also classifies a guest as a licensee, Section 96, page 224. The American Law Institute Restatement of Torts, Section 331, defines a gratuitous licensee as any licensee other than a business visitor, and in the comments in said section it is said that the phrase "gratuitous licensee" includes three types of persons including "social guests who, in a sense, are persons temporarily adopted into the possessor's family". In addition there are a number of well reasoned decisions by courts of other jurisdictions reaching the conclusion that where a guest is invited to come upon the premises of the host the relation created is not that of invitee and invitor in a business sense, and by the weight of authority the guest is a gratuitous licensee. Comeau v. Comeau, 285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002; Greenfield v. Miller, 173 Wis. 184, 180 N.W. 834, 12 A.L.R. 982; Bartkowski v. Schrembs, Ohio App., 67 N.E.2d 922; Page v. Murphy, 194 Minn. 607, 261 N.W. 443; Lewis v. Dear, 120 N.J.L. 244, 199 A. 887, 888; Cosgrave v. Malstrom, 127 N.J.L. 505, 23 A.2d 288; Roth v. Prudential Life Ins. Co. of N. Y., 266 App.Div. 872, 42 N.Y.S. 592; Laube v. Stevenson, 137 Conn. 469, 78 A.2d 693, 25 A.L.R.2d 592; Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941; Goldberg v. Straus, Fla., 45 So.2d 883; McNamara v. Hall, 38 Wash.2d 864, 233 P.2d 852; Kere-

tian v. Asadourian, 349 Ill.App. 390, 110 N.E.2d 679; Maher v. Voss, 7 Terry, Del., 418, 84 A.2d 527. But see Scheibel v. Lipton, 156 Ohio St. 308, 102 N.E.2d 453, in which the Supreme Court of Ohio, concluding an exhaustive opinion, refused to classify the person invited as either an invitee or licensee, stating a reasonable solution was to simply consider the invited person a social guest and the occupier of the premises as the host.

Inasmuch as the purpose of plaintiff's visit in the home of defendant's decedent on the occasion was of a social nature, we must hold that plaintiff was not an invitee, but occupied the status of a gratuitous licensee. Our next problem is to determine the duty that the possessor of land owes to one on his property occupying the status of a gratuitous licensee. An examination of the authorities discloses that the rule determinative of the liability of the host has been stated in varied terms. In 65 C.J.S., Negligence, § 35, pp. 495 and 496, the rule is stated as follows: "A social guest on the host's premises or in his home must take the premises as he finds them, with no greater right than a mere licensee with respect to the host's liability for injuries to the guest." And in the same section it is said: "* * * It follows that, as a general rule, the owner or person in charge of property is not liable, as for negligence, for injuries to licensees due to mere defects or dangers in the condition of the property or premises, or, as it has been expressed, due to passive negligence or acts of omission." The rule laid down in 38 Am.Jur., Section 117, page 778, is of like effect. In the annotation appearing in 25 A.L.R.2d, page 600, as a part of the summary, this statement indicates the rule applied by the weight of authority: "More specifically, it has been held that a guest can recover only where his injury is the result of *active and affirmative negligence* of the host while the guest was known to be on the premises, or of the failure of the host to remove or warn against defects amounting to a *trap or pitfall* known by the host to present a danger to the guest, and which

he also knows the guest will not, in the exercise of reasonable care, discover and avoid for himself." (Italics ours.)

The standard or rule announced by the above authorities has found sanction by the courts in a number of foreign jurisdictions, of which the following are typical: Sanders v. Brown, supra [73 Ariz. 116, 238 P.2d 944], in which the Supreme Court of Arizona, following Comeau v. Comeau, supra, said: "The rule seems to be settled on this point that the owners of the premises owe no duty to the guest other than to refrain from knowingly letting him run upon a hidden peril or wantonly or wilfully causing him harm." The Supreme Court of Minnesota in Page v. Murphy, supra, announced the law to be as laid down in the Comeau case. In Greenfield v. Miller, supra, the Supreme Court of Wisconsin, considering a host-guest case, held that under the general rule there was no liability on the licensor for injury sustained to one coming on the premises as licensee unless there was something on the property in the nature of a trap or the licensor was guilty of active negligence. In McNamara v. Hall, supra, it was held the only duty of occupier of premises to social guest was to refrain from willfully or wantonly injuring him, and Appellate Court of Illinois, 4th District, in Keretian v. Asadourian, supra, adopted the same standard in a host-guest case. Some jurisdictions have followed the rule announced by The American Law Institute Restatement of Torts. Measured by that rule a possessor of land is subject to liability for injuries caused to gratuitous licensees by a natural or artificial condition if he— "(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein." Restatement of the Law of Torts, Section 342, page 932. Our own courts have refused to recognize said standard

as the rule to be followed in Missouri. Stevenson v. Kansas City Southern Ry. Co., supra [348 Mo. 1216, 159 S.W.2d 263], in which the Supreme Court, after a full analysis of the Restatement's Rule, said: "Even this rule, as to known conditions, goes beyond the Missouri rule that such a licensee 'takes the premises as he finds them.' Missouri Annotations to Restatement of Torts, § 342; see, also, comment on Mann v. Pulliam, 344 Mo. 543, 127 S.W.2d 426, in 4 Mo.Law Rev. 470, and in 5 Mo.Law Rev. 478–79." See, also, Porchey v. Kelling, and Twine v. Norris Grain Co., supra. Although our courts have not had occasion to consider a situation analogous to the facts here presented, consideration and analysis of the decisions dealing with the relationship of licensor and licensee compels the conclusion that a gratuitous licensee takes the premises as he finds them, and in the absence of wanton or willful acts or active or affirmative negligence on the part of the licensor or possessor of the property, he cannot recover. Failure of the licensor to warn his guest of a hidden peril highly dangerous to life or limb, such as a trap, pitfall or dangerous hole would subject him to liability under this rule.

▮▮▮▮ Was the spot of grease three or four inches in diameter found on top of the porch floor the result of wanton or willful conduct or active or affirmative negligence on the part of Mrs. Chelist? Did it constitute a hidden peril highly dangerous to life and limb thereby requiring a warning of its presence? Both of these queries must be answered in the negative. The very conduct and acts of the parties prior to plaintiff's fall refutes the idea of wanton or willful conduct or the existence of a condition in the nature of a trap or pitfall upon the property. In particular we observe that not only did plaintiff pass over the same area where the spot existed in entering the house occupied by her host; but the latter preceded plaintiff in exiting from the dwelling and also, of necessity had to walk over or very near the identical place. If in fact there was existing a condition in the nature of a trap or pitfall and dangerous to life and limb, it is hardly probable that Mrs. Chelist would have ventured forth into the peril and danger. Neither do we believe that the spot of grease was brought about as the result of active or affirmative negligence on the part of Mrs. Chelist. "Active negligence" is negligence occurring in connection with activities conducted on the premises, whereas "passive negligence" denotes negligence which permits defects or causes dangers upon the property. In Potter Title & Trust Co. v. Young, 367 Pa. 239, 80 A.2d 76, the Supreme Court of Pennsylvania considered and announced the difference between "active" and "passive" negligence. In that case David Jones was a gratuitous licensee upon property under the control of a subcontractor engaged in constructing a highway, and was struck by a motor vehicle of the contractor. This was held to constitute active negligence. In Komlo v. Balazick, 169 Pa.Super. 296, 82 A.2d 706, the Superior Court of Pennsylvania followed the rule announced in the Potter Title & Trust Co. case, supra. In Twine v. Norris Grain Co., supra [26 S.W.2d 422], plaintiff unsuccessfully attempted to have the Kansas City Court of Appeals hold the defendant was guilty of active or affirmative negligence in maintaining a highly charged substation without proper safeguards or sufficient warning. In ruling against the contention the court said:

"It is true, of course, that a land occupier is subject to liability for bodily harm caused to a licensee by the active or affirmative negligence of the occupier. Most of the cases applying this principle are railroad cases where the train crew negligently failed to avoid injuring a trespasser or licensee whose presence on the track was known or should have been anticipated. A typical case is Ahnefeld v. Wabash Railroad Co., 212 Mo. 280, 111 S.W. 95. It is obvious that the plaintiff herein neither pleaded nor proved any facts showing that Twine's injury resulted from defendant's 'active or affirmative negligence,' as that

term is used by the Missouri courts in connection with the subject under discussion."

In the Porchey case, supra [353 Mo. 1034, 185 S.W.2d 823], the Supreme Court refused to convict the defendant of active or affirmative negligence in maintaining an open pit on premises used by pedestrians and pointed out that, "One sufficient distinction between the cases stressed by plaintiff, viz.: Henry v. Disbrow Mining Co., 144 Mo.App. 350, loc. cit. 356–359, 128 S.W. 841, loc. cit. 843, 844, and Schaaf v. St. Louis Basket & Box Co., 151 Mo. App. 35, 39, 43, 131 S.W. 936, 937, 938, is that in each active affirmative negligence inflicted the injury whereas here only passive negligence can be involved."

We have concluded that plaintiff failed to make a submissible case and defendant's motion for a directed verdict should have been sustained.

To hold that under the facts presented by the record Bernice Chelist was subject to liability to plaintiff would have the effect of imposing the same duty upon the occupier of a dwelling toward a social guest that is required of a business invitor, and so far as legal liability is concerned, the host would owe to his social guest the duty that the operator of a business is required to exercise toward a customer, in fact the guest would occupy the status of an invitee rather than a gratuitous licensee.

The judgment should be reversed and it is so ordered.

WM. R. COLLINSON, Special Judge, concurs.

DOUGLAS L. C. JONES, Special Judge, dissents.

JONES, Special Judge (dissenting).

Judge MATTHES' opinion in holding that the deposition of Bernice Chelist was taken pursuant to legal notice, properly admitted into evidence and that plaintiff was not disqualified from testifying as to all matters antedating the death of Bernice Chelist follows the spirit of the law, and I concur with said finding. However, I do not concur in Judge MATTHES' opinion in holding that the judgment should be reversed but believe that there was sufficient evidence to make a jury question and that the jury was correctly instructed on the relationship existing between plaintiff and Bernice Chelist as to what care and duty the latter owed the plaintiff.

It is my opinion that the evidence definitely shows that plaintiff was called by Bernice Chelist, her sister, and *requested* her to come over and take her (Bernice Chelist) for a ride, and "we would have lunch together".

A reading of the briefs filed by counsel shows that appellant had plaintiff admit that the visit was more or less social, however, the evidence remains that the visit was made at the *request* and invitation of Bernice Chelist (host), and in the opinion of this writer, plaintiff was, in every-day language, an invitee by invitation and request to the home of Bernice Chelist and not a licensee.

Once having determined this question, it then was the duty of the said Bernice Chelist "to use ordinary care to prevent injury to plaintiff". From a reading of the record, the host, Bernice Chelist, testified by deposition that she had, the night before, thrown some hamburger out for the cat and *had* told the girl to "*mop up the porch*", but the porch had not been cleaned.

This writer is of the opinion that it was a jury question as to whether the host, Bernice Chelist, had used ordinary care to prevent injury to plaintiff, and it is the further opinion of this writer that if she had not believed it was necessary to clean up the porch after throwing the cat meat out on said porch, then why did she so instruct the girl to mop up the porch. Was this not "active negligence" on the part of the host? This writer believes that it was as she, the host, knew of the condition and plaintiff did not, nor had the host warned plaintiff of such condition. Did she not

recognize the danger to one, and failing to remove or warn her guest of this danger, would she not then be guilty of "active negligence"? It is, however, my opinion that the plaintiff was an invitee, and following the opinion of the late Judge Lamm in Glaser v. Rothschild, 221 Mo. 108, 120 S.W. 1, loc. cit. 3:

"The situation, with reference to liability, radically changes when the owner invites the use of his premises for purposes connected with his own benefit, pleasure, and convenience. * * * The rule applicable to that change is that a licensee, who goes upon the premises of another by that other's invitation and for that other's purposes is no longer a bare licensee. He becomes an invitee, and the duty to take ordinary care to prevent his injury is at once raised, and for the breach of that duty an action lies."

Although it is admitted by this writer that the facts in the case of Glaser versus Rothschild were different in that said relationship between plaintiff and defendant was one of a business visitor to a house of business, and for some reason which this writer cannot follow, the duty on a business house to a business visitor should be different than the duty toward a guest of a private dwelling. Also see Twine v. Norris Grain Company, Kansas City Court of Appeals, 226 S.W.2d 415, loc. cit. 421.

It is this writer's opinion that the occupier of a dwelling house owes the duty to use ordinary care towards his social guest, who is present at the expressed invitation of the host and for the host's benefit, and it would naturally follow that the charge of ordinary care to the jury would be:

"By ordinary care as used in these instructions is meant such care as persons of ordinary prudence would exercise under the same or similar circumstances.",

and, therefore, the jury would determine what ordinary care would be under same and similar circumstances and would, more than likely, conclude that ordinary care as used by a business house would be greater than the ordinary care required in a private dwelling.

And Therefore, this writer cannot concur in the conclusion reached by Judge MATTHES that plaintiff failed to make a submissible case and that defendant's motion for a directed verdict should have been sustained, but is of the opinion that the judgment should be affirmed.

Deeming the opinion of the majority in conflict with the decision of the Supreme Court in Glaser v. Rothschild, the case should be certified to the Supreme Court pursuant to Article 5, § 10 of the Constitution of Missouri 1945, V.A.M.S.

PER CURIAM.

The opinion in this case reversing the decision below being deemed by Judge Douglas L. C. JONES, Special Judge herein, to be contrary to a previous decision of the Supreme Court of Missouri, the case is hereby transferred for final determination to the Supreme Court of Missouri.