VANDYKE & Co., Respondents, v. W. M. WALKER, · Appellant.

Kansas City Court of Appeals, April 4 and 25, 1892.

Real-Estate Agent: COMMISSIONS, WHEN EARNED. A real-estate agent is not entitled to commissions for a sale, made after the revocation of his authority to sell, or for a sale made to a purchaser not of his procurement.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED.

*Leslie Orear,* for appellant.

(1)   The second instruction given for the plaintiffs is erroneous in these particulars, viz.:   It assumes as a fixed fact the right of plaintiffs to sell defendant's farm, at the time of the contract, when that is the very point in issue, inasmuch as defendant claims in his answer, and in the evidence which tended to show that he had previously revoked the authority of plaintiffs to

act further under their employment, that he had withdrawn the farm from the market, when they proceeded to make the trade with Baker. The instruction is inconsistent with the instructions given for defendant, and cannot be harmonized with them, and assumes the controverted fact of the right to sell at the time plaintiffs acted, in three different phases; the instructions authorize the jury to find for plaintiffs though they may believe that defendant sold the farm himself, after revoking plaintiff's authority. *Wilkerson v. Thompson*, 82 Mo. 327, 328; *Peck v. Ritchey*, 66 Mo. 114; *Ins. Co. v. Academy*, 52 Mo. 480; *Rothschild v. Frensdorf*, 21 Mo. App. 318. (2) The court erred in refusing to give the instruction, numbered 3, asked for by defendant; it was a proper instruction, and was fully supported by the writing offered in evidence, as well as by the testimony of defendant and Baker. And the fourth instruction asked for by defendant should have been given by the court, as it properly defines the term advertisement used in the contract sued on. Bouvier's Law Dictionary [14 Ed.] 93, defining advertisement.

*Alf. F. Rector*, for respondents.

(1) The plaintiffs were entitled to the commission under either of the two theories presented: *First*, there can be no question as to the fact that Taylor made the sale to Baker, and that Baker was ready and willing to complete the purchase, and these facts would entitle Vandyke & Co. to their commission, although the sale was never completed; the same failing on account of Walker's refusal to make the deed. *Blaydes v. Adams*, 35 Mo. App. 526; *Harwood v. Diemer*, 41 Mo. App. 49. *Second.* If Baker's attention was brought to the land by the exertions of Vandyke & Co. they are entitled to the commission on said sale,

although made by Walker. *Jones v. Berry*, 37 Mo. App. 125. (2) The question of whether or not Walker had, before September 2, the day Baker came to Marshall and Taylor sold him the farm, withdrawn farm from sale by Vandyke & Co. was submitted to the jury by instructions, numbered 1, 3 and 4, given for the plaintiffs, and by instructions, numbered 1 and 2, given for the defendant, and the jury found the issue for the plaintiffs; this settles the question, and this court ought not to disturb the finding. *Blaydes v. Adams*, *supra*.

GILL, J.—The plaintiffs, real-estate agents at Marshall, Missouri, sued the defendant to recover commissions on the sale of a farm in Saline county. Plaintiffs had a verdict and judgment for $400, and the defendant appealed.

The evidence discloses the following state of facts: On the eighth day of July, 1891, defendant employed plaintiffs to secure a purchaser for his farm of three hundred and twenty acres, at $50 per acre, agreeing to pay therefor a commission of two and one-half per cent. on the total proceeds of the sale. The contract between the parties was reduced to writing, and the conclusion thereof reads as follows:

"I reserve the right to sell the above property myself, without paying a commission; but if I sell to anyone whose attention was called to the property by said Vandyke & Co., or to whom they have shown the same, or who has been directed to it by their advertisement, their commission shall be due.

"Witness my hand and seal this eighth day of July, 1891.

"W. M. WALKER, [Seal.]".

The defendant claims that shortly after thus engaging plaintiffs to sell his land at $50 per acre he

had a talk with Rainey, one of the plaintiffs, in which he revoked the authority to sell. However, about September 2, thereafter, one Baker, of Slater, Missouri, came to Marshall to look at the farm. He sought out defendant Walker and entered into negotiations for purchase of the land. They failed to agree in the afternoon, but separated with the understanding that they would meet again at the hotel in Marshall that night. Walker priced the land then at $55 per acre. Instead of meeting Walker, however, Baker went to plaintiff's office that night and they (Vandyke & Co.) signed a contract agreeing to sell the farm to Baker for $50 per acre. Plaintiffs claimed this authority under the contract of the previous July. The defendant repudiated this sale, so made by Vandyke & Co., with Baker, and refused to make a deed in accordance therewith. Subsequently, however, Baker and the defendant did come to terms, and the land was conveyed to Baker. Other portions of the testimony will be noted further on.

I.   The evidence here discloses two well-grounded objections to any recovery by plaintiffs. In the first place, at the time when Vandyke & Co., in behalf of Walker, assumed to sell the land to Baker, and signed the contract for $50 per acre, they had no such authority. The authority given July 8 had been revoked. Defendant seems all the time to have treated with plaintiff Rainey, who was one of the firm of Vandyke & Co. And Rainey himself testified that "after the contract (referring to the contract of agency) was made with us I had a conversation with Mr. Walker in reference to drawing the farm from sale. I said to him that I had carried a man over the farm, and that I thought he liked it pretty well, and I would not be surprised if he bought it; Mr. Walker said, 'Well, that is all right, but if you don't sell that farm to that man I am going to withdraw it, or I am going to raise on the price.'

\*   \*   \*   The man whom I took over the farm was named Anderson; I remarked to Walker that I had carried a man over the farm, and that I thought he liked it right well; he said that was all right, but if I did not sell to him he was going to withdraw it, or advance on the price, or something like that. He might have said that if I did not sell to that man."

Defendant Walker on the same subject testified that a short time after giving the authority to Vandyke & Co. to sell the land for $50 per acre he " was in their office and believed it was at the time that the man Anderson was in there, and Rainey was going out to show him the place, and asked defendant to go along; in a week or ten days after that time he asked Rainey what success he had had with the man he showed the place to, and he said he believed the man liked the place pretty well, and did not know but what he would buy it; I said to him, ' If you make a sale to that man, all right; but if you don't sell to him I will not sell for less than $55 per acre,' that I had rented it out meantime, and did not want to sell; if I had thought it was necessary to take up the article of agreement I would have done so at that time; I thought that the place was withdrawn after they did not sell to that man; I rented the farm to my son, some time after I had placed it with Vandyke & Co.; and on the first of September he had commenced to plow for wheat." And so it seems that when Baker approached Walker to buy the land the price *was* raised, and he declined to sell for less than $55 per acre. Now, the testimony of Rainey (one of the plaintiffs) and defendant Walker, quoted above, stands undisputed, and, indeed, is practically to the same effect. It shows conclusively that Walker did not intend to continue the authority with Vandyke & Co. to sell his land at the price fixed the prior July. He

said, in effect, this much to Rainey, "You can sell to Anderson for $50 (since you have gone to some trouble on that account, etc.), but if he does not purchase then you are not authorized to offer such terms to others."

But further, even admitting authority in Vandyke & Co. to sell defendant's land, this purchaser, Baker, was not of their procurement. Vandyke & Co. did not secure this purchaser. He came from his home at Slater to Marshall to see the land and attempt a purchase by reason of information furnished by a neighbor, one Connell. It seems that Rainey had, prior thereto, offered the land to Connell, but Connell thought it high and declined to purchase. Subsequently, Connell mentioned the land to Baker, and thereupon Baker proceeded to investigate the matter. He went to Marshall, and finding Walker, the owner, began negotiations which were interrupted as already said by the interposition of one of the plaintiffs. It was through no effort or advertisement of the plaintiffs that Baker came to make the purchase.

The judgment herein will be reversed. All concur.