GREGORY VIGEANT, APPELLANT, v. FIDELITY NATIONAL BANK & TRUST COMPANY, A CORPORATION, RESPONDENT.—158 S. W. (2d) 184.

Kansas City Court of Appeals.   December 1, 1941.

*Oscar S. Hill* and *Ira B. Burns* for appellant.

*Bowersock, Fizzell & Rhodes* and *Harding, Murphy & Tucker* for respondent.

776

SPERRY, C.—Plaintiff, Gregory Vigeant, sued defendant, Fidelity National Bank and Trust Company, for commission claimed to be due him for the sale of real estate owned by defendant. Plaintiff took an involuntary nonsuit and appeals from the order of the court overruling his motion to set the nonsuit aside.

Prior to May 12, 1927, defendant was the owner of certain real estate located in Kansas City, Missouri, known as "The Walnuts," and employed plaintiff to sell same at a price of $150,000. It agreed to pay him a commission of 10 per cent on the first $10,000 of the sale price, and 3 per cent on all sums above that.

Plaintiff contacted one C. O. Jones, a building contractor, interested him in the purchase of the property, and procured Mr. Jones to submit an offer of $150,000; but the offer was one of trade rather than of cash and it was rejected by defendant. On May 4, 1927, plaintiff submitted to defendant a "time" proposition of purchase on behalf of Jones, in the amount of $150,000, and defendant indicated that it would be favorably considered. On May 6th, defendant informed plaintiff that it had received an offer of $135,000, cash for the property and plaintiff then and there told defendant that Jones and one Coen were jointly interested in the purchase of the property and that the above offer was made by Coen but was, in fact, the joint offer of Coen and Jones, and that one A. O. Thompson was also jointly interested with Jones and Coen in said offer to purchase. The reference to Thompson was stricken from the evidence on the grounds that plaintiff had received information as to Thompson's interest from Thompson, who was dead at the time of the trial. Defendant, at that time, agreed to pay plaintiff commission on any sale made to Coen if it was proved that Coen was, in fact, acting in connection with Jones in the purchase of the property.

Thereafter, on May 11, 1927, defendant invited plaintiff to come to its office. Plaintiff and his attorney there met Mr. Coen and defendant's president, Mr. Hall. The latter informed plaintiff, in Coen's presence, that: "We are about to make a deal on the Walnuts. Your commission will be $2100." Plaintiff, again in the presence of

Coen, told Mr. Hall that Coen and Jones were acting jointly in the purchase of the property. Coen said nothing during this conversation. Upon advice of counsel plaintiff refused the $2100 offer and later sued for $4250, which he claims is due him.

Plaintiff testified that he, at no time, talked with Mr. Coen about the purchase of the property and that he did not discuss the matter with Thompson until after the sale to Coen was consummated. He also admitted that he testified, in a deposition which was in evidence, that Jones had told him that he, Jones, had invited Coen to come in with him on the purchase of the property and that Jones thought that Coen had "double crossed" him and gone to the bank to buy direct

Plaintiff called C. O. Jones as a witness and the latter gave testimony to the effect that he had submitted an offer through plaintiff, for the purchase of the property, and that said offer was not accepted; that at the time defendant actually sold the property to Coen he, Jones, had no interest of "any kind" in said property. Jones testified that he had talked to Coen, prior to the latter's purchase of the property, with a view to a joint purchase by witness and Coen. Plaintiff's counsel sought to question Jones, while he was on the witness stand, concerning his interest in the sale of the property to Coen; but such testimony was excluded on objection, on the grounds that questions along that line amounted to an effort on the part of plaintiff to cross-examine his own witness. Jones testified that he was and is a contractor and builder; that Coen was and is engaged in selling building materials; and that Thompson was, at the time the sale was made, engaged in the lumber business.

The following questions and answers appear in the record in connection with the testimony of Mr. Jones, to-wit:

"Mr. Strayer: We expect that the evidence will prove and will show that Mr. Jones interested Coen in the property and that Mr. Jones interested Mr. Thompson in the property, expect the evidence to show that when the property was acquired Mr. Thompson paid part of the purchase price, and we expect to show that by Mr. Jones' answer that he had no interest in the property, he meant no legal interest, but that he had the interest of developing that property, which he later did, and that is a sufficient interest to support our contention that these men were jointly interested and that Gregory Vigeant was the procuring cause of the sale.

"Q. (By Mr. Strayer): Mr. Jones, did you talk to Mr. W. F. Coen at this time about this property? . . .

"Q. (By Mr. Hill): Did you have any *understanding* with Mr. Coen about the purchase of this property before the sale was finally made? A. I thought so, yes, sir.

"Q. What was the plan or understanding you had with him?

"Mr. Tucker: Just a moment. A qualifying question.

"Mr. Hill: Well now, just a minute. He has answered the question.

"The Court: For the purpose of an objection, ask him a question.

"Mr. Tucker: Did you have any written agreement of any kind with Mr. Coen relative to the acquisition of some interest in this real estate?

"Mr. Hill: Object to that as immaterial, he didn't have to have any.

"The Court: Overruled.

"Mr. Tucker: Did you? A. Not at this time, no sir.

"Mr. Tucker: Then we move that the previous answer be stricken out and the jury instructed to disregard it because any interest in real estate or any contract for an interest in real estate to be binding must be in writing.

"The Court: Sustained.

"Q. (By Mr. Hill): Well, what was the understanding—you said there was one—between you and Coen before Coen acquired this property, as to what you would do about it, if he did acquire it?

"Mr. Tucker: Same objection.

"The Court: Sustained.

"Mr. Hill: I am talking about acquiring it.

"The Court: I understand what you are talking about Mr. Hill.

"Mr. Hill: We offer to show that if the witness were permitted to answer he would say that he and Coen were *interested in Coen* obtaining title to the property and that after he, Coen, obtained the title to the property, they would then work out a plan of developing the property and building large apartments or other structure on the property, in the development of the project, and that Mr. Jones— Mr. Coen was *interested* in the project because he was selling materials and Mr. Jones was purchasing large quantities of materials from him in the various building operations he was carrying on. But the witness will testify, if permitted by the Court, that he and Coen, before Coen acquired this property did discuss the plans of developing the property and this is offered for the purpose of showing that both of them were *interested* in the property and in its development and in the acquisition of the title, so that these operations could be carried on.

"Mr. Tucker: To which the defendant objects for numerous reasons, the first part of the testimony counsel relates *are conclusions,* part of it is cross-examination, part of it is repetition as to discussion as to the improvement, and further that is wholly immaterial whether this man had a casual interest or an anticipated interest in the development in the light of his own testimony that at the time it was actually acquired, he owned no interest whatever in that property.

"The Court: Sustained.

"Mr. Strayer: On behalf of the plaintiff, I make the further offer that evidence that Jones, Coen and Thompson were jointly interested in this property is admissible under the case of Glade v. Eastern Illinois Mining Company, 107 S. W. 1002, to show at this time the real facts were disguised and to show the joint interest of these three parties and that therefore this testimony is not hearsay but is admissible if Coen, Jones and Thompson were all acting in conjunction.

"Mr. Tucker: Objected to for all the reasons heretofore stated.

"The Court: Sustained. . . .

"Q. Mr. Jones, I will ask you if you, before this property was sold, interested Mr. Thompson or the A. O. Thompson Lumber Company in this deal, and if the Thompson Lumber Company or A. O. Thompson put up part of the purchase price for the sale that was afterwards made?

"Mr. Tucker: That is objected to as calling for a conclusion, invading the province fo the jury, not tending to prove any issue in this case at all and not shown that this witness has any knowledge or was present when any such deals of any kind or character were ever made, if they were ever made.

"Mr. Hill: He can explain that.

"The Court: Sustained.

"Mr. Hill: I offer to show by this witness that if he were permitted to answer the question that has just been propounded, he would say that he talked the matter over with Mr. Coen before the property was finally sold and that Mr. Coen suggested that he didn't want to carry the property himself alone and that then Mr. Jones, who was well acquainted with Mr. Thompson and the Thompson Lumber Company, itself, arranged to have the Thompson Lumber Company and Mr. Thompson come into the deal and pay half of the purchase price of the property that was sold, and Mr. Thompson of the Thompson Lumber Company agreed to do that.

"Mr. Tucker: Let the record show that if this witness will testify to any such fact, it would be a direct contradiction of his own deposition given by this witness, but it is objected to for the further reason that it is wholly immaterial, calls for a conclusion, does not tend to prove any issue in this case, and for the further reason that it is not shown that this witness was present at any time when any money was advanced, when any sale was made that would be material to the issues in this case.

"The Court: It is calling manifestly for a conclusion and invading the province of the jury. . . .

"Q. (By Mr. Hill): Now, state anything else, if there was anything else, said between you and Mr. Coen with reference to this property if it was acquired later on by the methods discussed. A.

Well, I don't know whether there was any specific understanding between Mr. Coen and myself.

"Q. Well, the substance of what was said. A. I don't remember every word that was said, but the main thing was that I was trying to interest him in the property. And I naturally assumed that if I interested him that I would . . .

"Mr. Tucker: We object to what he assumed.

"The Court: Sustained.

"Q. (By Mr. Hill): What was said about that? A. I don't know that anything specifically was said about my developing the property except that I would naturally figure that I would develop it after interesting other people in it.

"Q. Mr. Hill: I offer to prove by the witness on the stand that if he were permitted to answer the preceding question he would say that various plans were discussed between Mr. Coen and Mr. Jones, looking to the development and building of buildings on this property, and that there was an understanding between Mr. Jones, Mr. Coen and Mr. Thompson of the Thompson Lumber Company, that if the property was acquired by Mr. Coen and/or the Thompson Lumber Company or Mr. Thompson that he, Mr. Jones, would be instrumental in the development of the property which it is shown he afterwards did build.

"Mr. Tucker: That is objected to as calling for a conclusion, not founded upon statements of fact, for the further reason this witness has already related all conversations that he remembers between the parties and any conclusions and deductions or assumptions would merely be conclusions and invade the province of the jury.

"The Court: Sustained on the first two grounds.

"Mr. Hill: I offer to show by this witness that he afterwards built the large buildings amounting to two and a half million dollars upon this property and that before the buildings were erected, immediately after this sale, there was a—out of the sale of the property divided three ways, twenty thousand to Mr. Coen and twenty thousand to Thompson or the Thompson Lumber Company.

"Mr. Tucker: Objected to as immaterial.

"The Court: Sustained."

On cross-examination the following appears:

"Q. (By Mr. Tucker): I will ask you now, if, on page 15 of your deposition, these questions were asked you and these answers given by you, back in 1928, when this matter was all clear in your mind.

"Q. (By Mr. Tucker) (Reading):

" 'Q. At this first conversation with Mr. Coen, did he say anything about having considered the purchase of this property before he talked to you at all? A. Well, he said he had talked about it to several different people, several builders, said he had talked to other people about it before.

" 'Q. Before he talked to you about it? A. Yes, sir.'

"Q. Were those question asked and those answers given? A. I think so.

"Q. And were those truthful answers? A. Yes, sir.

"Q. Referring to page 23 of the deposition, I will ask you if those questions and answers were given (reading):

" 'Q. Mr. Jones, isn't it true that at the time of the first conversation you had with Mr. Coen about this property that Mr. Coen informed you then that he had already had under discussion this very piece of property for a period of several months prior to that time? A. Well, he said he had talked to various people about it.

" 'Q. Isn't it a fact also that Mr. Coen knew at the very time of that first conversation between you and Coen concerning this property that Mr. Coen had knowledge of the fact that Mr. McCanles, Mr. Miller and several other persons were negotiating for the purchase of that property? A. Yes, he said they were.'

"Q. Were those questions asked and those answers given? A. Yes, sir.

"Q. And they were truthful answers? A. Yes, sir.

"Q. I will ask you, Mr. Jones, if those questions and those answers were also given by you at the time you gave your deposition in 1928 (reading):

" 'Q. Now that you have just detailed as I understand it is the first conversation as you recollect you had with Mr. Coen about the property? A. Yes.

" 'Q. Following that, Mr. Jones, when did you next talk to Mr. Coen about this deal? A. Four or five days afterward.

" 'Q. What was said at that time—that is, this second conversation . . . what was the substance of the conversation as you recall it? A. Well, I think I rather chided Mr. Coen on the fact . . . I first asked Mr. Coen if he had been to the bank. I says I thought they were going to make a deal with me and he said he had. I said, "Well, I am just afraid you have blown up my deal down there," and he said, "I have . . . I went down and talked to them and made them a proposition and they accepted it." ' '

"Q. And those facts are true, according to your best recollection, are they? A. Yes.

"Q. Very well. I will ask you if these facts, referring to the bottom of page 25 and continuing to 26, refreshes your recollection (reading):

" 'Q. As a matter of fact isn't it true that the second conversation that you had with Mr. Coen concerning this property was when you called Mr. Coen and told him that he, Coen, had blown up your deal with the bank, wasn't that your second conversation with Mr. Coen? A. Yes, I think it was.

" 'Q. At the time Mr. Coen contracted with the bank for the purchase of this property in question did you have any interest of any kind in that property? A. No.

" 'Q. Do you remember making those answers? A. Yes, sir.

" 'Q. And are all of those answers true, according to your best recollection as to the facts, Mr. Jones? A. Yes, sir.' "

Deed records introduced in evidence disclose that defendant deeded the real estate herein mentioned to one Shoemaker, who was then Coen's secretary, under date of April 17, 1927. Shoemaker, on the same day, executed a deed of trust in the amount of $75,000 to defendant and, also on the same day, deeded the property to Coen and A. O. Thompson. On April 18, 1928, Coen and Thompson deeded to the Walnuts Investment Company, a corporation. On March 1, 1929, this corporation deeded to the Walnuts Building Corporation which latter corporation had been formed by C. O. Jones. Plaintiff offered in evidence a contract between Coen and defendant, executed May 12, 1927, prior to the sale of the property, whereby Coen agreed to indemnify defendant against any claim for commission which might be made by plaintiff. It was offered as an admission against interest, and was rejected.

Plaintiff and Jones were the only witnesses called and the gist testimony of each is set out herein.

The testimony of plaintiff is positively that he, at no time, talked with Mr. Coen about the sale of this property. The only evidence in the case as to Mr. Jones having actually purchased the property or having acquired any interest therein, either on his own account or in partnership with Coen or Thompson, comes from Jones himself. He testified that he, Jones, had no interest of any kind in the property when it was sold to Coen.

His further positive testimony was to the effect that Coen told him, on the first occasion that he talked with him in an effort to interest him in the purchase of the property, that he had previously discussed the property with a number of builders and knew that it was for sale. He also testified that after he learned that Coen was dealing directly for the purchase of the property he had a second conversation with him and he chided him and told him that he was afraid that he had "blown up my deal;" that Coen told him that he had blown it up, that he had made an offer and that it had been accepted; and that, at the time Coen purchased, on May 11, 1927, he had no definite understanding of any kind with Coen about the property. It appears from all of the evidence that he and Coen had merely discussed what could be done with it at a time when Jones was submitting his own offer, which was rejected. He testified that the first time he ever talked with Thompson about the property was after Coen had bought it.

The record discloses that Coen alone bought the property on May 11, 1927; that Thompson did not acquire an interest, at least in the

record title, until a year later, and that, two years after the sale to Coen was made, the title was transferred to a corporation which had been formed by Jones. There is nothing in the record to show who owned the stock of that corporation on and after the date of transfer of title to it.

This court, speaking through the late Judge Trimble, Low v. Paddock, 220 S. W. 969, l. c. 971, 972, said:

"It is well settled that, before the broker is entitled to recover, he must be the procuring cause of that for which he is employed. It is not sufficient for his act to be merely one of the links in a chain of causes; he must be the procuring or inducing cause. [Ramsey v. West, 31 Mo. App. 676, 687; Gerhart Real Estate Co. v. Marjorie Real Estate Co., 144 Mo. App. 620, 625, 129 S. W. 419.]

". . . Furthermore, there may be further and different evidence next time. We are inclined to observe, however, that the evidence appears very slight to show that plaintiff's efforts 'procured Haley' as a purchaser. Haley was not 'found' by plaintiff. Haley already knew of the farm being for sale and put himself in a position to become a purchaser by selling his own farm before he met the broker. The fact that the latter drove his customer by Haley's on the way home was merely incidental and accidental. The purchaser must be procured through the broker, or he ·cannot claim to be the procuring cause. [Vandyke v. Walter, 49 Mo. App. 381.] Where his claim to commission rests merely on his finding a purchaser and not upon efforts put forth whereby the latter was induced to make the purchase, the act of the agent must be the foundation of the negotiations between the purchaser and seller. [Schwartze v. Yearly, 31 Md. 270.] 'Whether the broker is to "introduce" a customer or to "find" or "procure" one, whether he is to do these things combined, his duties remain practically the same, as the words "find," "procure," and "introduce" are generally used synonymously in the making of such contracts.' [4 R. C. L. 304.]"

The Springfield Court of Appeals said, Meredith v. Martin, 9 S. W. (2d) l. c. 861:

"But in order to entitle a real estate broker to a commission in this State, his efforts must be the efficient or procuring cause of the sale on which he relies. [English v. Page (Mo. App.), 236 S. W. 392.] If a deal is closed by his principal or through some other agent, about which plaintiff knew nothing and in regard to which he rendered no material aid, certainly he is entitled to no commission. In this case the evidence shows the deal plaintiff introduced was never consummated. It involved the erection of a building at considerable expense and, from defendant's standpoint, required as lessee a person who could guarantee the rent sufficiently to justify such outlay of money. The agreement finally made was with a different individual from the one introduced by plaintiff. The lease was made after the

failure of plaintiff's deal, apparently because Charlie McAbee was not a person able financially to carry out the terms of the proposed lease. The fact that plaintiff may have indirectly caused defendant to meet J. G. McAbee, to whom a lease was finally made, is not sufficient to entitle plaintiff to a commission. He must recover on the deal of which he was the procuring cause, and not an a new contract made after the abandonment of the original.''

In a case where a farm had been listed for sale with plaintiff and one Cochrane had asked plaintiff the price of the farm, stating that he might be able to sell it to a man by the name of Ware, this court said through TRIMBLE, J. (Mack v. Mohler, 52 S. W. (2d) l. c. 192, 193):

''The question then arises: Is there any evidence in plaintiff's behalf showing, or tending to show, that plaintiff was the procuring cause of the sale to Ware? It is, of course, unquestioned that defendant listed the land with plaintiff. The latter claims to have sublisted the land, so to speak, with Cochrane and certain others. Plaintiff, himself, did nothing to bring the parties together or to bring the sale or secure the purchaser. It is Cochrane who claims to have brought the parties together. There were no negotiations carried on between him and Ware; all of the negotiations were between defendant and the purchaser. Cochrane did not even communicate to defendant that he had a prospective purchaser in Ware. Cochrane relies upon nothing that he did except a statement by him to Ware in which he told Ware, he (Cochrane) had the land for sale. It is not disputed that Ware knew the land, having lived on it for 15 years when a boy and the land was owned by his father; that it was continuously on the market ever since the St. Joseph Cattle Loan Company owned it, and many efforts were made by the then owners to sell it and by persons to purchase it, the only difficulty being that the owners would not sell it in parts but insisted on selling it all at one time. Ware had looked at the land, and he and Schneider had considered buying it together and would have done so, if they could have bought it under the 'wheat plan;' but Schneider did not want to buy under the other arrangement and, if that could not be done, Ware would have to go it alone.

''There is no proof that Cochrane brought the parties together or did anything to bring about the sale. The very most that can be said of Cochrane's acts in the matter, taking everything he states at par, is that he had to do only slightly with what may, with some indulgence, be called a mere incident or link in the events occurring in the course of things proceeding to the sale. But even if his part could be said to rise to the dignity of a link in the chain of causes resulting in a sale, this is not sufficient to entitled him or his principal Mack, to a commission. [Williams v. Mashburn (Mo. App.), 37 S. W. (2d) 478, 482.] The agent's act must be the procuring cause, or one of the

procuring causes, of the sale, before he is entitled to a commission. [Vandyke & Co. v. Walker, 49 Mo. App. 381; McCrory v. Kellogg, 106 Mo. App. 597, 81 S. W. 465.]''

In this case there is no proof that either Jones or plaintiff brought Coen and defendant together; nor is there proof that Coen, Thompson and Jones bought the property in a joint venture. We think that plaintiff's evidence failed to establish a fact essential to his right to recover, to-wit, that he was the efficient procuring cause of the sale. This is true even though we accept as true not only all of the evidence received in the case, but also, for the purpose of this review, all competent facts properly offered (not conclusions), in plaintiff's rejected offers of proof. From all the evidence, and admissible offered evidence, we are unable to say that plaintiff really did anything in the matter of the sale of the property other than to attempt, unsuccessfully, to sell it to Jones. We cannot even say that plaintiff ''had to do only slightly with what may with some indulgence be called a mere incident or link in the events ocurring in the course of things proceeding to the sale.'' [Mack v. Mohler, *supra*.] It may be, as plaintiff contends, that Coen acquired title for himself, Jones and Thompson; but there was no competent evidence received or offered tending to prove it. On the contrary, the competent evidence received and offered tended to prove that Coen knew about the property long before Jones ever mentioned it to him, and that he bought for himself and could have done with the property as he pleased, irrespective of the wishes of Jones and Thompson; and there is no charge made or evidence offered of fraud or double dealing.

The indemnity contract given by Coen to defendant was properly excluded from evidence. The execution of the contract merely indicates an effort on the part of defendant to protect itself against a threatened lawsuit, and it does not constitute an admission against interest. It was excluded after plaintiff and his lawyer refused to accept an offer of $2100 in settlement of plaintiff's asserted claim. To hold that it is admissible would be to say that a defendant cannot contract to protect itself against the result of a threatened lawsuit without admitting its liability. This we cannot do.

Plaintiff testified that he was called to defendant's office by its president who, in the presence of Mr. Coen and plaintiff's lawyer, told plaintiff ''Your commission will be $2100.00.'' Plaintiff says that Mr. Hall's statement amounts to an admission of defendant's liability. Defendant says that it was a compromise offer and, therefore, inadmissible. The testimony was admitted without objection on the part of defendant. Therefore, we are not called upon to rule the question of whether or not the testimony should have been excluded on objection based upon the ground that the statement was made as an offer in compromise. The testimony was before the jury and the question before us is: With that testimony before the jury

was there substantial evidence of defendants' liability which entitled plaintiff to have the issue submitted to the jury? We thing there was and, consequently, the trial court erred in refusing to submit it to the jury.

The judgment is reversed and the cause is remanded. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause is remanded. All concur.