GREGORY VIGEANT v. FIDELITY NATIONAL BANK & TRUST COMPANY, A
CORPORATION.—188 S. W. (2d) 533.

Kansas City Court of Appeals.   May 21, 1945.

*Ira B. Burns* for appellant.

*Bowersock & Fizzell, Justine Bowersock, Robert B. Fizzell, Harding Murphy & Tucker, John T. Harding* and *R. C. Tucker* for respondent.

BLAND, P. J.—This is an action to recover a real estate commission. At the close of plaintiff's testimony, the court indicated that it would give defendant's instruction in the nature of a demurrer to the evidence; whereupon, plaintiff took a nonsuit and, his motion to set the same aside having been overruled, he has appealed. This is the second appeal in the case. See Vigeant v. Fidelity National Bank & Trust Company, 158 S. W. (2d) 184, where most of the facts are fully stated.

The petition alleges that plaintiff was employed by the defendant to sell a certain tract of land in Kansas City; that finally, through his efforts, it was sold for $135,000 to W. F. Coen, A. O. Thompson and others. Plaintiff asks for a reasonable commission for his efforts.

At the trial, which has resulted in the present appeal, in addition to the testimony set forth in the opinion in the former appeal, plaintiff introduced the deposition of Mr. Hall, president of defendant bank, which he had taken, Mr. Hall being dead at the time of the trial.

Mr. Hall testified that he was actively in charge for the defendant of the sale of the property in question; that he employed plaintiff to sell it for the defendant; that it was understood that if plaintiff sold the property he would be paid a commission of 10% on the first

$10,000 of the purchase price and 3% on the balance (or a total of $4250 on a sale of the property for $135,000); that he had many talks with the plaintiff about various proposed deals and transactions relative to the property; that in the use of the word "deals" he meant the work of plaintiff in connection with the property, but not in connection with its sale to Mr. Coen; that plaintiff submitted but one offer of $150,000, that of Mr. C. O. Jones, which offer was rejected as the latter did not want to pay cash "but to put in some equities."

The witness further testified that the property was sold to Mr. Coen in May, 1927, but that plaintiff was not instrumental in the sale. In another place in his testimony he testified that he thought that the property was sold to Messrs. Coen and Thompson at that time; that plaintiff gave him a list of prospects but that Coen's name did not appear on the list; that Coen told him, at the time the deal was made, that he did not know plaintiff; that he thought plaintiff said he did not know Coen; that plaintiff said he had never talked to Coen.

The witness further testified that he asked plaintiff to come to his office, which he did, accompanied by his attorney; that at that time the witness told plaintiff that the defendant had decided to sell the property to Mr. Coen for $135,000; that he told him that he thought that plaintiff had done some work on it and he was trying to get him some compensation and "I assumed that he would be willing to be satisfied with a half of the commission. We discussed the matter pro and con and he said he wanted to consider it and he went out and came back" with his attorney, "and said he wouldn't consider it."

The witness further testified that plaintiff had done a great deal of work in attempting to sell the property and he thought that the plaintiff was entitled to some kind of compensation for his efforts, but that plaintiff had had nothing to do with the sale of the property to Coen and was not entitled to any compensation for his efforts in that regard; that his offer to pay plaintiff a half of the commission was not on account of anything that plaintiff had done in an effort to sell the property to Coen, but to compensate him for his work in his efforts to sell the property to others; that he told plaintiff he would attempt to get for him "an equivalent to a half of the regular real estate commission" because of the general work he had done in attempting to sell the property.

He further testified that plaintiff claimed that he had interested Mr. Coen in the property; that plaintiff told him that Mr. Coen was one of his customers, although he never talked to him about it; that plaintiff said: "I understand that Mr. Jones talked to him (Coen) about that" (the property); that the witness did not recall that the witness had ever talked to Mr. Jones about the property; that plaintiff did not tell him that Coen and Jones were "jointly interested in the property in some way;" that he did not think that his offer to attempt to get for the plaintiff an equivalent to a half of the commission was

in the nature of a compromise, for the reason, he did not think that plaintiff had earned any compensation in connection with the sale of the property to Mr. Coen; that the witness merely wanted to have plaintiff "satisfied in connection with the deal." In this connection the witness testified: "I never offered to pay him any commission or anything on account of commission. It was offered to him for—because he had done a lot of work on the case, but I didn't think he was entitled to a commission in his sale because he didn't procure the sale. Q. And you made the offer of $2100 in payment for this service which he had performed, as you have described in a previous answer, and the developments leading to the sale? . . . A. I don't think I said that, and I didn't make any offer at all. I said I would try to get it, and I asked him if he would be satisfied if I could get for him what was equivalent to a half of the regular real estate commission, not because of his efforts in making this particular sale, but because of the general work that he had done on this deal." Mr. Hall testified that only a part of the purchase price was paid at the time of the signing of the contract on May 12, 1927, and that the balance was paid at the time of the delivery of the deed on April 17, 1928.

It appears from the opinion in the former appeal that, at the former trial, it was shown that the property was deeded by the defendant to one Shoemaker under date of April 17, 1927. At the last trial it was shown that the property was deeded to him under date of April 17, 1928, and that Shoemaker, on the same day, executed a deed of trust to defendant, and also on the same day, deeded the property to Coen and A. O. Thompson.

Plaintiff offered to prove that, at the time he had the conversation with Mr. Hall in reference to his commission, Hall said to him: "Your commission is $2100. That is all the bank can afford to pay on a sale of $135,000." Plaintiff further offered to prove that at the time in question Mr. Hall said to him: "Your commission is $2100." Objection was made to these offers of proof, which the court sustained. The objection was based on the ground that the evidence disclosed the offers of proof were concerning a matter in the nature of a compromise and settlement and that the questions were not within the scope, or of the type or character, of those propounded to Mr. Hall in his deposition, the latter being dead.

At the last trial there was oral testimony, in addition to that of Mr. Hall, given by plaintiff and Mr. Jones. This testimony varies in some respects from that given in the former trial but, as it was substantially the same, it is unnecessary to restate their testimony, in view of the fact that it is fully set out in the opinion in the former appeal. We held, at that time, that the testimony, other than the statement of plaintiff, that Mr. Hall said to him "Your commission will be $2100" was not sufficient evidence of a substantial nature to warrant a submission of the case to the jury. But with such evidence in,

there was sufficient evidence to require the submission to the jury of the case and we reversed the judgment and remanded the case for a new trial.

Plaintiff contends that the court erred in sustaining the demurrer to the evidence, for the reason, that the evidence warrants the inference that Jones, Coen and Thompson were jointly interest in acquiring the property that was deeded to Shoemaker, and that plaintiff had secured Jones and Shoemaker as purchasers but, in order to get the property cheaper, it was bought in the name of Coen.

In the last appeal we did not pass upon the question as to whether Mr. Hall's statement "Your commission will be $2,100" was made as an offer of compromise, for the reason that no objection was made to the testimony at the trial. At the last trial counsel for defendant objected to the testimony of Mr. Hall concerning the latter's statement to plaintiff that he would attempt to get him a half commission, on the sale of the land to Coen for $135,000 or $2100, with which to pay him for his services in connection with attempting to sell the property to others than Coen, on the ground that this testimony disclosed an effort to reach a compromise of plaintiff's claim for commission on the sale to Coen.

This testimony, of Mr. Hall, we believe, was incompetent, for the reason that, although, Mr. Hall stated that he was not attempting a compromise with plaintiff, this opinion, or conclusion, of the witness was not in accordance with the actual facts. The facts clearly disclose that the offer was based upon the hypothesis that if Mr. Hall could get $2100 for the plaintiff and it was accepted by him, it would be in satisfaction of his claim upon defendant of a full commission for his alleged sale of the land to Coen. It is true that Hall said that he did not make the offer because plaintiff had not sold the property. He said that he had had nothing to do with it, and that he had not earned any commission on this account; that he was unwilling to recognize that plaintiff was entitled to any commission upon that transaction.

However, even though it be conceded that Mr. Hall was offering to pay plaintiff an equivalent to half the commission upon the amount of the purchase price of the property, as sold to Mr. Coen, on account of the work that plaintiff had done in attempting to interest others than Mr. Coen, neither of the parties hereto is making any claim that defendant was legally liable to pay plaintiff this amount, or any amount, in fact, for his efforts to sell the property to others than Coen and his associates and, unquestionably, the offer was made in view of plaintiff's claim that he had made the sale that was actually made. The witness testified: "I assumed that he would be willing to be *satisfied* with half a commission." At another place he testified: "I asked him (plaintiff) if he would be *satisfied* if I could get him what was equivalent to half the regular real estate commission." According to Hall's testimony, plaintiff retired with his counsel in order to

consider the witness' offer and later the plaintiff came back and said he would not accept it.

That part of Hall's testimony, that is competent, together with the testimony of plaintiff and Jones, does not of itself make any stronger case in favor of plaintiff than was made by him in the former trial. Plaintiff was not entitled to go to the jury unless the testimony, taken as a whole, together with the offers of proof to the effect that Mr. Hall admitted he was entitled to a commission, but that defendant could only afford to pay him a half of the commission, or $2,100, makes a case for the jury. We remain of the opinion, as we held in the former case, that such testimony and offers of proof were sufficient to make out a case for the plaintiff, and the only question that remains is whether the court erred in refusing to allow plaintiff to prove that Mr. Hall stated to him: "Your commission is $2100. That is all the bank can afford to pay on a sale of $135,000," and "your commission is $2100."

Plaintiff assigns as error the failure of the court to permit this testimony to be introduced in evidence, and we think that plaintiff's contention must be sustained in this regard. Although Mr. Hall was plaintiff's witness, plaintiff is not conclusively bound by the testimony of Mr. Hall to the effect that he told plaintiff he was not entitled to any commission; that he would not pay him any commission on the sale of the property to Mr. Coen, as he had not earned it, as the offers of proof tended to contradict Mr. Hall, (Klotsch v. P. F. Collier & Son, 159 S. W. (2d) 589, 594). According to Mr. Hall he denied to plaintiff that the latter was entitled to a commission on the sale but the offers of proof tended to show that Mr. Hall admitted that he was. There is nothing in the offers of proof to indicate that Mr. Hall proposed to pay plaintiff $2100 in compromise or settlement of plaintiff's claim to the effect that plaintiff was entitled to $4250, or the full commission on the sale price of $135,000, for which sum the property was sold to Mr. Coen, or, to Coen and others. The offers of proof are susceptible to the interpretation that, although Mr. Hall said that plaintiff was entitled to a commission of $4250, he refused to pay plaintiff more than $2100, on the excuse that the bank could not afford to pay more on the sale. In other words, Mr. Hall assumed an arbitrary position in regard to the matter, although he admitted that plaintiff was entitled to a commission. The offers of proof were not developed but there was nothing about the offers of proof, on their face, to show that Mr. Hall's statement was made in an effort to compromise plaintiff's claim for the full commission. If a compromise had been attempted Mr. Hall would not have conceded, according to the offers of proof, that plaintiff was entitled to any commission (and it will be noted that it was not the amount of the commission that was in controversy, as it is conceded that if plaintiff is entitled to any commission, he is entitled to $4250) but he would have taken the position that plaintiff was not entitled to any com-

mission, but in order to settle the matter defendant would pay $2100. Having conceded that plaintiff was entitled to a commission, no settlement could have been made for any less than the full sum. An offer to pay a less sum on a debt, than that conceded to be due, does not constitute a valid offer of compromise, [Stephens v. Curtner, 222 S. W. 497, 498; Friedman v. State Mut. Life Assur. Co. of Worcester, Mass., 108 S. W. (2d) 156; Henry Wood v. Telephone Co., 223 Mo. 537; U. S. Water & Steam Supply Co. v. Dreyfus, 104 Mo. App. 434; DeBuhr v. Thompson & Maxwell, 134 Mo. App. 21] and such a settlement would have been void, as not made in good faith. [Land and Lbr. Co. v. Lumber Co., 136 Mo. App. 176; Painter v. Prud. Ins. Co., 71 S. W. (2d) 483; Sappington v. Cent. Mut. Ins. Co., 77 S. W. (2d) 140.] We think the offers of proof were not subject to the objection that they involved an offer of compromise or settlement.

However, defendant urges that they were incompetent for the reason that ''When Infinite Silence seals the lips of one party to a contract or conversation, the law seals the lips of the other party. Plaintiff had the right to read the deposition of Hall, subject to proper legal objections (as to admissibility, etc.) but plaintiff, after having read such deposition cannot himself go on the stand and contradict and change the evidence of the dead witness. Such a rule would invite all sorts of frauds. It would let down the bars and by ingenuity plaintiff could make a dead man testify in any manner he saw fit.''

The statute Revised Statutes Missouri, 1939, section 1187, provides, generally, that where one of the parties to a contract is dead or insane, the other party shall not be permitted to testify in his own favor. ''This statute, while it destroyed the disabilities under which parties to the record were placed by the common-law rule, was designed to put them on an equality; and hence, if either party died or became insane, the other party was rendered incompetent because he could not be opposed by the only person who was capable of meeting and rebutting his testimony. Where the disability is raised by the statute, it supposes a total disqualification at the time of trial, or when the evidence is taken. *But it is not intended to exclude evidence which was admissible and competent at the time it was given.*'' [Parsons v. Parsons, 45 Mo. 265, 268.] (Italics ours.)

The Supreme Court in Stone v. Hunt, 114 Mo. 66, l. c. 70, 71, speaking of Coughlin v. Haeussler, Ex'r., 50 Mo. 126; stated: ''The deposition of the plaintiff had been taken and filed; but he appeared at the first trial and he and the defendant then testified, and their evidence was preserved by a bill of exceptions. The defendant died before the second trial, at which the plaintiff read in evidence the deposition which he had before given. The executrix of the original defendant had not offered and did not read the evidence of her testate found in the bill of exceptions. This court held that the deposition was properly admitted in evidence. Speaking through Judge Bliss

the court said: 'It cannot be doubted that if both parties had died, and a record of their testimony had been preserved, it might at the second trial have been offered on either side. Is it reasonable to put the plaintiff in a worse condition than his administrator would be in? . . . The object of judicial investigation is the truth, and the tendency of modern ruling is, under reasonable rules, to exclude nothing that can throw light upon the transaction. Statutes and rules are interpreted to this end, and it would be in the interest of concealment to shut out upon the second trial the testimony of the plaintiff merely because the defendant refuses to offer that of his testator.' That case has been cited on several occasions by this court, has been followed by the court of appeals in a like case (Leahy v. Rayburn, 33 Mo. App. 55), and the rule there laid down, as thus far stated, is based upon sound reasoning and is now again affirmed.''

Evidence of transactions with a decedent, may be testified to by the other party to the transactions, when the deposition of the deceased is on file in a case, so far as such matters are covered by the deposition, although it is not offered in evidence by either party. [Allen v. Chouteau, 102 Mo. 309; Leahy v. Rayburn, 33 Mo. App. 55; Carpenter v. Machine Co., 162 Mo. App. 296; Ferry v. Woody, 241 S. W.. 78.] The offers of proof were concerning a matter that was testified to by Mr. Hall in his deposition. Defendant admits that the offers of proof and the testimony of Mr. Hall are directly opposed, for it says in its brief that, plaintiff sought to place in the mouth of Mr. Hall: ''Your commission is $2100. That is all the bank can afford to pay on a sale of $135,000.'' 'Please remember that Plaintiff was undertaking to testify as to what Hall said. Now, listen to Hall.' I never offered to pay him any commission or anything on account of commission . . . I didn't think he was entitled to a commission in this sale because he didn't procure the sale.''

''If Hall had been alive he could not very well have stated more emphatically than he did in his deposition that he did not state to plaintiff that his commission was 2100 on the sale. Some of Mr. Hall's testimony was incompetent, as we have indicated, but there is ample competent testimony in his deposition to controvert what is contained in the offers of proof. We think that the objection to the offers of proof should not have been sustained. Plaintiff could have shown all that is stated in his offers of proof though the deposition had not been offered by either party and we fail to see why plaintiff, by offering the deposition, was conclusively bound thereby. To hold otherwise would not be in keeping with the tendency of the courts not to rule out anything that throws light on the transaction. We are of the opinion that the testimony of Mr. Hall should be considered the same as the testimony of any other witness, that is, that, while plaintiff, having made Mr. Hall his witness by introducing his deposition, is bound by his statements contained therein, he is not conclusively so

bound, but was privileged to offer testimony contradicting that of Mr. Hall, (see Klotsch v. P. F. Collier & Son, *supra*) and it would have been within the province of the jury to believe either Mr. Hall's version or plaintiff's version of the occurrence.

The judgment is reversed and the cause remanded. All concur.